## SUPREME COURT.

PRUDENCE E. POWER agt. RALPH LESTER and MELVIN POWER.

THE SAME agt. THE SAME and others.

Under the statutes of 1848 and 1849, the *marriage* of a mortgagee, a single female, with the mortgagor, does not cancel the debt, as at common law—the mortgage may be foreclosed and the mortgage debt collected by the mortgagee, unaffected by the marriage.

Nor does the execution, after marriage, by the husband and wife, of a mortgage on the same premises to a third person, discharge the lien of the wife's mortgage against her husband.

*Monroe Special Term*, *September*, 1858.

HEARING on pleadings and evidence.

The actions were brought to foreclose two several mortgages.

    GEO. F. DANFORTH, *for plaintiff.*

    S. MATHEWS, *for defendant Lester.*

WELLES, Justice. On the 1st day of April, 1851, the defendant, Power, executed to the plaintiff, under the name of Prudence E. Rapalje, she being at the time an unmarried woman, his bond of that date in the penalty of $2,000, conditioned to pay her $951.92 on the 1st day of April, 1855, with interest; and on the same day, to secure the payment of the money mentioned in the condition of the bond, the de-

Power agt. Lester.

fendant, Power, executed to the said plaintiff a mortgage on certain real estate described in the mortgage, situated in the county of Ontario, which mortgage was duly acknowledged and recorded. On the 26th May, 1852, the plaintiff intermarried with the defendant Power.

On the 26th day of May, 1856, the defendant Power executed to the defendant Lester his bond of that date, conditioned for the payment of $60,000 on the 28th day of the same month of May. On the day of the date of this bond, the defendant Power, with the plaintiff, his wife, executed to the defendant Lester a mortgage upon the premises described in the first mentioned mortgage, and upon other lands, to secure the payment of the $60,000 mentioned in the last mentioned bond. This mortgage was also duly acknowledged and recorded. The parties are described in this mortgage as Melvin Power and Prudence E., his wife, of Farmington, &c., of the first part, and Ralph Lester, of the city of Rochester, &c., of the second part. By it, the party of the first sold "and by these presents do grant and convey to the said party of the second part, his heirs and assigns, all," &c. This mortgage, of the defendant Power and wife to Lester, has been foreclosed by action and the premises sold under the judgment to the defendant Lester. The action first above entitled is brought to foreclose the mortgage given by the defendant Power to the plaintiff before their marriage.

The action secondly entitled is brought upon a bond and mortgage given by the defendant Power, to the plaintiff and all the defendants in that action except the defendants Power and Lester, executed on the said first day of April, 1851, to secure the payment of $4,759.55, upon certain premises in Ontario county, and which are covered by the mortgage from the defendant Power and wife to Lester, above mentioned. The said $4,759.55 was payable by the terms of the mortgage on the death of one Eliza Rapalje, widow of Abraham B. Rapalje, and the interest payable to her semi-annually during her life. It was admitted that she died March 28th, 1855. The judgment of foreclosure of Lester's mortgage contained a

provision reserving the plaintiff's rights under her mortgages, and that she was not to be prejudiced by such judgment in respect to those mortgages.

Evidence was given touching the circumstances attending the execution by the plaintiff of the mortgage to Lester, from which the counsel of Lester claimed she intended to release the mortgaged premises from her mortgages. The obligees and mortgagees in the bond and mortgage to foreclose which the second action is brought, except the plaintiff, refused to join with her as plaintiffs in bringing the action, and are, therefore, made defendants. It was admitted on the hearing that the defendant Lester had acquired their interest in the bond and mortgage which are the foundation of the second action. None of the defendants in either action except Lester appear or defend.

From the foregoing facts I have come to the following conclusions: 1. The marriage of the plaintiff with the defendant Melvin Power did not cancel the bonds or the mortgages of the latter to the former, or either of them. They were executed after the act of April 7th, 1848 (*Sess. L. of* 1848, *p.* 307), took effect, which declares that the real and personal property of any female who might thereafter marry and which she should own at the time of marriage, and the rents, issues and profits thereof, should not be subject to the disposal of her husband, nor be liable for his debts, and should continue her sole and separate property as if she were a single female. By the common law, the effect of such marriage would have been to cancel the husband's liability, for the obvious reason that all the wife's personal estate became vested in the husband upon the marriage, and with it the debts owing by him to her. The statute referred to, however, has changed the law, and declares that her property shall not be subject to his disposal, nor be liable for his debts, *but shall continue her sole and separate property as if she were a single female.* The case is within the letter of the act, and, as I think, within its spirit and intention. Her property is to continue hers the same as if she were a single female. This could not be, if the marriage can-

cels the debt. The act makes no exception of a case where the *feme sole* marries her debtor, and therefore virtually repeals the common law rule. It has the effect in all cases of an *ante-nuptial* agreement, not only to allow her to continue the sole and separate owner of any property real and personal which she has at the marriage, but to preserve and keep alive and in force any existing indebtedness from him to her ; which is as much a part of her personal estate at the time of the marriage as if the indebtedness was against any other person. The statute is a remedial one in favor of married women and should receive a liberal construction. If the foregoing view is correct, there is no difficulty in enforcing the plaintiff's rights. A court of equity has ample power for that purpose. 2. The execution, by the plaintiff with her husband, of the mortgage to the defendant Lester did not discharge the lien of her mortgages against the defendant her husband. She had no estate in the lands in question at the date of the former mortgage. Her interest in those lands was merely an inchoate right of dower which she was able to convey and which she thereby released. The mortgage to Lester contains no words manifesting an intention to release the lien of the plaintiff's mortgages. No reference whatever is made to them. Besides, there is doubt whether a married woman is capable of making a valid release of land from the operation of a mortgage she holds upon it. The third section of the act, as amended in 1849, gives her the right to convey and devise her property, but does not in terms authorize her to release a lien. It may be that the power is implied in the first section, which provides that the property she owned at the time of the marriage shall continue her sole and separate property, *the same as if she were a single female.* However that may be, it is sufficient to say that the mortgage to Lester does not profess to be a release, or anything equivalent to a release of the plaintiff's mortgage liens. It is strictly a grant, subject to a defeasance. A grant or conveyance passes the thing granted or conveyed to the grantee. A release is a remission of some right or claim by which the releasor remits the same, and estops himself from

again setting up his claim, and should always contain a plain and distinct remission of the claim to which it relates. (*Burrill's Law Dict. p.* 880, "*Release.*") It is on this theory that a mortgagee may release the land mortgaged to a person in possession of the equity of redemption from the lien of the mortgage. The plaintiff's interest as mortgagee was not an interest in the land which could be sold or conveyed or passed out of her, to vest in another by way of grant or conveyance, distinct from the mortgage debts. If her uniting with her husband in the mortgage to Lester had any effect upon the mortgages by the defendant Power, to her and to her and others, it was to transfer the latter mortgages or her interests therein to Lester. But this could not be done unless the mortgage debts were also assigned, as the debts were the principals and the mortgages the incidents. If the mortgages could be assigned without the bonds, it would work the destruction of the mortgages, and thus defeat the object of the assignment and render void the attempt to assign them. The incident cannot be separated from the principal, as the latter always draws with it the former. *Accessorium non ducit, sed sequitur principale.* (*Aymar* agt. *Bill and others,* 5 *John. Ch. R.* 570.)

I am of the opinion, therefore, that the plaintiff is entitled to judgment of foreclosure in both actions.

An order may be entered in the first entitled action, referring it to Theodore B. Hamilton, of the city of Rochester, to compute the amount due on the bond and mortgage described in the complaint in that action. And in the second action let an order be entered referring it to the same referee to compute the amount due to the plaintiff, as one of the obligees and mortgagees in the bond and mortgage described in the complaint in that action.