CELESTIA MEEKER, Administratrix et al., Appellants, *v.* CORDELIA WRIGHT et al., Respondents.

Where, since the passage of the act of 1860, concerning the rights and liabilities of husband and wife (chap. 90, Laws of 1860), lands have been conveyed to a husband and wife, jointly, without any statement in the deed as to the manner in which the grantees shall hold, they are tenants in common. (DANFORTH, J.; RAPALLO and MILLER, JJ., concurring.)

*Torrey* v. *Torrey* (14 N. Y., 430), distinguished; *Goelet* v. *Gori* (31 Barb., 314); *Miller* v. *Miller* (9 Abb. Pr. [N. S], 444); *Beach* v. *Hollister* (3 Hun, 519); *Freeman* v. *Barber* (3 T. & C., 574), so far as this point is concerned, disapproved.

Even if under such a conveyance they are tenants of the entirety, not tenants in common, a conveyance by the husband for a valuable consideration of his interest in the lands to the wife is good; and a bond and mortgage, executed by her to secure part of the purchase money, are valid.

*Meeker* v. *Wright* (11 Hun, 533), reversed.

(Submitted January 29, 1879; decided February 18, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 11 Hun, 533.)

This action was brought by plaintiffs, as administrators of the estate of Samuel Daily, to foreclose a mortgage executed by defendant Cordelia Wright, then Cordelia Daily, to said Samuel Daily.

The facts appear sufficiently in the opinion.

*Warren & Kellogg*, for appellants. The husband and wife, to whom the farm was conveyed, held it as tenants in

common. (R. S. [6th ed., Banks], 1104, § 442; 3 id., 160; *Sims* v. *Rickets,* 9 Am. R., 679; 35 Ind., 181; *Kaufman* v. *Whitney,* 50 Miss., 103; *Rowland* v. *Palmer,* 50 Ala., 182; *Monroe* v. *May,* 9 Kan., 466; *Cashman* v. *Henry,* 7 N. Y. Weekly Dig., No. 15.) The deed from the husband to his wife was based upon a sufficient consideration, and should be upheld in equity. (*Sheppard* v. *Sheppard,* 7 J. Ch., 56; 10 Ves., 146, 149; *Hunt* v. *Johnson,* 44 N. Y., 27; *Sims* v. *Rickets,* 9 Am. R., 679, 689; *Tennison* v. *Tennison,* 46 Mo., 77.) This was so, even if they held the land as tenants of the entirety. (2 Kent's Com., 133; 1 Preston on Abst. of Title, 334, 335; *Jackson* v. *McConnell,* 19 Wend., 162; *Bk. of Rochester* v. *Gregory,* 49 Barb., 162; *Beach* v. *Hollister,* 3 Hun, 521; *Lawrence* v. *Bayard,* 1 Paige, 70; *Sheridan* v. *House,* 4 Keyes, 589; *Sheldon* v. *Clancy,* 61 Barb., 475; *Jaques* v. *M. E. Church,* 17 J. R., 548; Clancy on Married Women, 355, 358; *Savage* v. *O'Neil,* 44 N. Y., 298.) A married woman's conveyance is valid, without an acknowledgment or a private examination. (*Cramer* v. *Comstock,* 11 How., 486; *Andrews* v. *Shaffer,* 12 id., 441; *Wiles* v. *Peck,* 26 N. Y., 42, 47.)

*William H. Hyde,* for respondents. The husband and wife became seized under the deed as tenants of the entirety, and took as one person in law, and the deed from the husband to the wife, and the mortgage from her back to him were void. (1 Blackstone Com. [Cooley], book 2, p. 182; 5 Term R., 654; *Doe* v. *Parrot,* 2 Vern. [Chy.]: 120, *Greeneley's Case,* 4 Coke's Rep., 284; *Green* v. *King,* 2 Black. Rep., 1211; *Alton Wood's Case,* 1 Coke's Rep., 76, note [E. 2], and cases cited; 2 Kent's Com. [10th ed.], 118, 119; 2 Blk. Com., 183; Co. Litt. 137; 2 Vern., 120; *Jackson* v. *Stevens,* 16 J. R., 110, 115; *Rogers* v. *Benson,* 3 J. Chy., 431, 437; *Barber* v. *Harris,* 15 Wend., 615, 617; *Jackson* v. *McConnell,* 19 id., 175, 177; *Doe* v. *Howland,* 8 Cow., 283; *Towey* v. *Towey,* 14 N. Y., 430; *Goelet* v. *Gori,* 31 Barb., 314; 2 Kent's Com. [3d ed.], 132, 133; 1 Preston on Abst. Title,

334, 335, 536; *F. and M. Nat Bk. Rochester* v. *Gregory,* 14 Barb., 162; *F. and M. Nat. Bk.* v. *Gregory,* 49 id., 155; *Freeman* v. *Barber,* 3 Sup. Ct. [T. & C.], 575; *Dunn* v. *Hornbeck,* 7 Hun, 629; *Beach* v. *Hollister,* 5 Sup. Ct. [T. & C.], 571; *Thornton* v. *Thornton,* 3 Randolph, 183; *Elliott* v. *Nichols,* 8 Am. L. Reg. [N. S.], 433, 436; *French* v. *Mehan,* 56 Penn. St., 289; *Diver* v. *Diver,* 56 id., 106; *McDuff* v. *Beauchamp,* 50 Miss., 531; *Fisher* v. *Provin,* 25 Mich:, 350; *Ketchum* v. *Wadsworth,* 5 Wis., 102; *Shaw* v. *Hearsey,* 5 Mass., 521; *Wales* v. *Coffin,* 13 id., 215; *Davis* v. *Clark,* 26 Ind., 428; *Ames* v. *Norman,* 4 Sneeds [Tenn.], 683; *Cockran* v. *Kerney,* 9 Ky.; *Washburn* v. *Burns,* 34 N. J., 18.) The statutory enactments in this State, affecting the property of married women, have no relation to an estate like the one at bar, and it remains as it existed before, unaffected by them. (Laws of 1848, chap. 200; Laws of 1862, chap. 172; Laws of 1849, chap. 375; *White* v. *Wager,* 25 N. Y., 328; *Winans* v. *Peebles,* 32 id., 423.) The burden was upon the husband of showing that the mortgage was executed without fear or compulsion by him. (*Richardson* v. *Hittle,* 31 Ind., 121; *Whitbeck* v. *Whitbeck,* 25 Mich., 439; *Ferris* v. *Brush,* 1 Edw. Chy., 572; *In the Matter of Finch,* 1 Clark's Chy., 538; *Graham* v. *Van Wyck,* 7 How. Pr., 373; *Fry* v. *Fry,* 7 Paige, 461; *Boyd* v. *De La Montagnie,* 7 N. Y. Weekly Digest, p. 134.)

DANFORTH, J. By deed dated September 22, 1865, one Clarissa Smith (the mother of the defendant Cordelia) conveyed a portion of the premises described in the complaint in this action to Samuel Daily and Cordelia Daily, and on the first day of April, 1870, Samuel Daily executed and delivered to Cordelia a deed, purporting to convey to her, in consideration of $1,500 (the receipt of which he acknowledged), the premises above referred to with another parcel of ten acres, "and all his right and interest in the personal property then or thereafter to be placed on the premises," and on the same day Cordelia executed and delivered to Samuel Daily

the bond and mortgage in question, to secure the payment of $1,000, part of the purchase-money of the premises described therein. During the life of Samuel, the defendant Cordelia, by payments at various times, reduced the amount secured, so that at the time of the trial there was unpaid only the sum of $500 and interest from January 2, 1873. Samuel Daily died in September, 1872, and this action is brought by the administrator of his estate. A variety of defenses were set up, and among others it was alleged, that at the time of these various transactions, Cordelia and Samuel were husband and wife. The trial court considered the defense valid and dismissed the complaint.

The deed from Clarissa Smith to Samuel Daily and Cordelia Daily was, for a consideration, found by the trial court to be good and valuable, stated in the deed to have been $1,000, paid by the grantees, and which as the undisputed evidence shows moved from each. The deed as the trial court found, and as appears from the instrument itself, contains no statement as to the manner in which the grantees should hold the lands described in it.

Upon this state of facts it is plain that the grantees became tenants in common of the premises, for the statute expressly provides that every estate granted to two or more persons in their own right shall be a tenancy in common unless expressly declared to be a joint tenancy. (1 R. S., pt. 2, tit. 2, art. 2, § 44.) And from this it would follow that the deed from Samuel Daily to Cordelia Daily conveying as it does his interest in the lands would furnish an abundant consideration for the bond and mortgage. In addition to that however his deed conveys to her ten acres of other lands, the whole of which for aught that appears he owned individually. The value of the lands conveyed is not found but there is no reason for assuming that it was less than the sum stated in the deed. (*Jackson* v *McChesney*, 7 Cow., 360; *Wood* v. *Chapin*, 13 N. Y., 509.) But the learned court also finds as a fact, that at the time of the execution of the several conveyances and the bond and mortgage above

referred to, Samuel Daily and Cordelia Daily were husband and wife, and therefore concludes that the statute has no application and that they became tenants of the entirety of the premises conveyed to them by Clarissa Smith, that for the same reason the deed from Samuel to Cordelia was void at law, and therefore that the mortgage, so far as its consideration came from the real estate, is void.  This view was sustained by the General Term but is, I think, erroneous.

At the time of the execution of the deed from Clarissa Smith to Samuel Daily and Cordelia Daily, the statutes of 1848 and 1849, for the more effectual protection of the property of married women, and those of subsequent years, 1860–1862, concerning the rights and liabilities of husband and wife, were in force.

By that of 1848 *chapter* 200 as amended in 1849, *chapter* 375, any married female may take by grant, etc., from any person other than her husband and hold to her sole and separate use real and personal property and any interest or estate therein, and the rents, issues and profits thereof in the same manner and with the like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband nor be liable for his debts ; — it was argued however that inasmuch as an unmarried woman never could convey to her husband — she having none (*White* v. *Wager*, 25 N. Y., 333), or hold lands with him, *Goelet* v. *Gori*, (31 Barb. 314), and as this statute in terms clothed the wife with such capacity only as an unmarried woman had, therefore the married woman could neither convey to her husband or hold lands as tenant in common with him.  But the act of 1860, chapter 90, entitled "An act concerning the rights and liabilities of husband and wife," is not open to this criticism.  Without adverting to other portions of it, it is enough to call attention to its enactment, "that the property both real and personal which comes to any married woman by grant, and the rents, issues and proceeds of all such property, shall notwithstanding her marriage, be and remain her sole and separate property, and shall not be subject to the con-

trol or interference of her husband or liable for his debts."
Now the conveyance by Mrs. Smith was a grant to Cordelia
Daily, and none the less so because Samuel Daily was
co-grantee, and as we have seen, except for the marital rela-
tions between them, they would be, under the common law
and statute, tenants in common.   As such, she would be
considered severally seized of her share; thus having a dis-
tinct freehold, wholly independent of Samuel Daily and in
no privity with him, she could sell and convey her share.
Either could compel the other to a partition, and each
would be entitled to an account from the other for a due
share of the rents and profits of the estate.   There is here
then a grant of property, with rents, issues and profits
thereof, to a married woman.   The common law gives to
the co-grantee all the rents, issues and proceeds of the entire
property, permits him to mortgage or even sell, to the entire
exclusion of the other grantee during her life-time, and per-
mits the same to be taken by his creditors to pay his debts—
simply because this other grantee or co-tenant is a married
woman and his wife—but the statute says, all this shall, not-
withstanding her marriage, be and remain the sole and sepa-
rate property of the married woman, and shall not be subject
to the disposal of her husband or liable for his debts.   The
case is within the letter of the statute and within its spirit—
it is not excepted from its provisions.   The statute and the
rule of the common law cannot stand together, and the latter
must give way.   It never stood upon truth or reason, but
on a fiction.   It ignored the civil existence of the wife and
merged it with all her rights in that of her husband, and can
be sustained, if at all, by an idle and unprofitable refine-
ment.   Under the statutes the interests of the husband and
wife in property are no longer identical, but separate and
independent.

    In the case of *Matteson* v. *The N. Y. Central Railroad
Company* (62 Barb., 373), Judge MULLIN, delivering the
opinion of the General Term, says: "The husband and the
wife are for all legal purposes no longer one person."   And

the .construction which led to this general observation has been applied in so many cases that the conclusion arrived at in the case before us may be deemed well supported by authority.

In *Power* v. *Lester* (17 How. Pr., 413 ; S. C. on appeal, 23 N Y., 529), the case disclosed a bond secured by mortgage upon certain real estate given by an unmarried man to a single woman. The parties afterwards became husband and wife, and together executed a mortgage to one Lester, upon the same and other premises. In an action to foreclose the first mortgage the last mortgagee claimed (1) that the marriage of the plaintiff with the defendant extinguished the debt secured by the bond and mortgage, and (2) that the wife could not sue the husband on the bond and consequently could not maintain an action to foreclose the mortgage, but the trial court held that " the statute (of 1848) virtually repeals the common law rule" (17 How. Pr., 415, 416). And this court in opinions delivered by Judges JAMES, COMSTOCK and DENIO affirmed the judgment rendered by the Special Term—Judge JAMES saying : " It was a general rule of the common law that when a man married a woman to whom he was indebted, the debt was thereby released, * * * because husband and wife make but one person in law, which unity of persons disabled the wife from suing the husband." " In this State the Code and the acts of 1848 and 1849 have completely swept away the common law rule which gave the husband rights in and control over the property of the wife." Marriage no longer operates upon the property, but only upon the person. It will be seen that although the statute does not in terms abrogate the common law rule referred to, yet the court held that it " makes no distinction in favor of the husband," and that there was nothing in the language of the statute or its general policy which would justify the discrimination suggested. The questions presented were very fully considered in the case cited, in the Supreme Court and in this court, and the conclusion reached in the case before us is only a little further on in the same

road.  Many recent decisions by this court are in the same
spirit and to the same end, and seem to render a further dis-
cussion unnecessary.  (*Ballin* v. *Dillaye*, 37 N. Y., 35;
*Bodine* v. *Killeen*, 53 id., 93 ; *Rowe* v. *Smith*, 45 id., 230;
*Baum* v. *Mullen*, 47 id., 577 ; *Cashman* v. *Henry*, 75 id.,
103.)

The various cases cited by the learned counsel for the
respondent, in support of the decision of the court below,
have not been overlooked.  Those earlier than the statutes
referred to have no application, if the rule of the common
law has been changed by legislation.  *Torrey* v. *Torrey* (14
N. Y., 430) was, it is true, decided in 1856, and the effect
of a conveyance to husband and wife was considered.  The
court re-asserted the doctrine of the common law, holding
that the grantees were seized, not as joint tenants or
tenants in common, but of the entirety ; both judges, how-
ever, who delivered opinions (Hubbard, p. 433 ; Denio, p.
432), were careful to state " that the case is not influenced
by the acts of 1848, 1849, for the protection of the property
of married women, *for the conveyance was made prior to the
first of these acts.*"  The decision itself was rendered before
the act of 1860, which I have cited.  *Goelet* v. *Gori* (31
Barb., 313) was at Special Term and can hardly be consid-
ered as an authority upon the point now before us.  The
action was to charge husband and wife, lessees, upon their
covenant, to pay rent, and the learned court, without any
discussion of the subject, dismissed the question by saying
" the acts of 1848 and 1849 are not intended to enable mar-
ried women to take and hold property jointly with their
husbands, but to take and hold and dispose of property *as
if they had no husbands.*"  This case was followed in
*Farmers and Mechanics' Bank* v. *Gregory* (49 Barb., 162)
and accepted as authority without discussion.  In 1871 the
same question was presented in the case of *Miller* v. *Miller*
(9 Abb. Pr. [N. S.], 444), and the cases above cited were sub-
mitted to and followed as controlling the court at Special
Term ; but except for these decisions, it is plain the court

would have held differently, for the learned judge says : " I was inclined to the opinion that by these acts a married woman was enabled to take and hold real property or any interest or estate therein the same as if unmarried, which would include the right to take and hold under a deed to her and another person, and that other person might be her husband, and that she was by them released from all the common law rules in regard thereto, and that under a deed to husband and wife by virtue of the statute, they would become tenants in common the same as other persons."

In *Beach* v. *Hollister* (3 Hun, 519), the same question was before the court and very summarily disposed of by a divided court, the majority, by GILBERT, J., saying : " These statutes operate only upon property which is exclusively the wife's, and were not intended to destroy the legal unity of husband and wife, or to change the rule of the common law governing the effect of conveyances to them jointly," and citing the cases of *Goelet* v. *Gori* ; *Farmers' Bank* v. *Gregory*, above referred to, and *Freeman* v. *Barber* (3 T. & C., 574). This case was decided by the Supreme Court of the Third Department, on the strength of *Goelet* v. *Gori* and *F. M. Nat. Bk.* v. *Gregory*, the court saying : " The question now raised must be considered *res adjudicata.*" It will be seen then that so far as authority goes it all rests upon the Special Term case of *Goelet* v. *Gori.* I have been able to find no reason for its support.

If this view is correct, then by the deed from Clarissa Smith to Cordelia Daily and Samuel Daily, each became tenant in common with the other, and as such each had a valuable interest which could be conveyed, and therefore the deed from Samuel Daily to Cordelia Daily did. convey an estate or interest of value, and supports as by a good and valuable consideration the mortgage, unless by the same rule of the common law the deed is wholly invalid by reason of the marital relation existing between the parties. It may be conceded that this would be so in law where neither husband nor wife could take from the other, any more, as the books

say, " than a monk who is dead in law and considered as
no person." And so the court held as early as 1794,
when in *Firehas on the demise of Jane Symes, widow,* v.
*Pennant* (2 Wilson, 254), the Kings's Court at Westminster
considered whether a grant " by a lord of a manor to his
wife be good in law or not." The question was thought
quite new and although the trial was postponed to enable
counsel to search for authority none could be cited " to show
whether such a grant was good or bad,"and the court reluct-
antly held that it was not good, and gave judgment for the
defendant, and so it has been to this day ; but the doctrine
is very technical and has been easily and frequently evaded,
and during the same period it has been as uniformly held
that such a conveyance may be sustained in equity, where
the wife has been regarded as a person having a separate
existence, separate rights and a capability of holding sepa-
rate property ; and unless wholly without consideration a
conveyance defective in consequence of the common law
rule is upheld. (*Shepard* v. *Shepard,* 7 John. Chy., 57 ;
*Hunt* v. *Johnson,* 44 N. Y., 27.) The transaction then
which resulted in the execution of the bond and mortgage
by the respondent is to be regarded as valid within plain
principles of equity. These principles have indeed been
recognized and applied by the trial court in this case, for
the defendant sought not only to defeat a foreclosure of the
mortgage but to recover back the money paid by her upon
it. She failed in this. The same instrument by which
Samuel Daily undertook to convey the land conveyed also
personal property. The mortgage secured the price of both,
and each as much as the other formed the consideration for
its execution. The trial court and the General Term hold
the conveyance operative, and the mortgage valid so far as
the personal property is concerned. We think the mortgage
valid as to both.

The same result will follow even if the deed from Clarissa
Smith to Samuel Daily and Cordelia Daily did not make
them tenants in common. If, as the court below held, they,

by virtue of it became tenants of the entirety, then by the common law Samuel Daily had the right to alienate in fee his share subject only to the wife's right of survivorship and the further right to sell, lease or mortgage the entire property for the joint lien of himself and his wife (*Grute* v. *Locroft*, Cro. Eliz., 287; *Barber* v. *Harris*, 15 Wend., 616 ; *Jackson* v. *McConnell*, 19 id., 175) he had also the right to the possession of the property during the same time, and to the receipt of the rents and profits thereof — and all this he might do without his wife's consent, and even in spite of her opposition ; or with her consent, she joining in the conveyance, give to any one a title in fee,— indeed if they had conveyed to a third person although expressly for the purpose of having that third person convey to her, her title so obtained would be good in law and equity, and this would be so although in the deed it had been written that the sole purpose of such conveyance was to vest in the wife a title in fee simple. No one attacks her title now — no one has disputed her right under the deed, or to the possession and enjoyment of the premises — the annual use of which is conceded to be $125. This she acquired by the deed. It was valid and efficient for that purpose. (*Sheldon* v. *Clancy*, 61 Barb., 475 ; *Jaques* v. *Methodist Episcopal Church*, 17 Johns., 548.) But for this use no allowance has been made, and to what extent, if not to the full sum stated in the bond and mortgage, she should be required to pay, can be better determined upon another trial.

It was also found by the trial court "that the consideration of the mortgage was in part the price of personal property transferred by Samuel Daily, and that the mortgage was valid to the extent of its value, but it is also found that besides interest, an amount has been paid upon the mortgage greater than this value, and that the payments should be so applied rather than on the price of the land." This finding was excepted to. I have carefully examined the evidence and am unable to find any in regard to the items of personal property transferred at the time of the execution of

the deed or placed on the farm afterwards except a general description — and I find no evidence as to its value. There is testimony concerning personal property sold by Samuel Daily from the farm and the price it brought, but this was in 1871, and has no tendency to show what or how much personal property the defendant received by virtue of the deed, or to what extent it formed the consideration of the mortgage. The exception, therefore, was well taken.

It is however objected by the respondent's counsel that the acknowledgment of the mortgage by Mrs. Daily is insufficient, because the certificate does not show that it was taken separate and apart from her husband, and executed without fear or control, and the General Term having come to the conclusion, on other grounds, that the complaint should be dismissed, decline to pass upon that objection ; but whatever its merits may be, it is not available to the defendant, for the complaint alleges that the defendant did " duly acknowledge and deliver the mortgage ; " and this the defendant not only does not deny, but expressly admits by her answer. The allegation, must, therefore, be taken as true.

The judgment should be reversed and a new trial granted, with costs to abide the event.

RAPALLO, and MILLER, JJ., concur ; CHURCH, CH. J., FOLGER, ANDREWS and EARL, JJ., concur in result on last ground stated in opinion.

Judgment reversed.