MARY A. BROWN, Appellant, *against* HORACE K. THURBER *et al.*, Respondents.

(Decided April 4th, 1881.)

An action may be maintained by a married woman, even in a court having no equity powers, upon a cause of action transferred to her directly by her husband.

Part of the subject matter of a conveyance was described as "all book accounts, bills receivable, judgments, claims and demands whatsoever, due or belonging to" the grantor. *Held,* that this included a claim on which a suit by the grantor was pending, and which was expected to ripen into a judgment.

Under a stipulation, unqualified in its language, that the testimony of a witness upon a former trial may be read in evidence, no objection to the admissibility of such testimony can properly be entertained.

After the dismissal, by the general term of the Marine Court of the city of New York, of an appeal by defendants from an order continuing an action in the name of an assignee of the plaintiff, it is erroneous for the general term of that court, on a subsequent appeal by the defendants from a judgment in the action, to reverse such order, and to reverse the judgment on account of supposed error in making that order; although, *it seems,* on an appeal to the Court of Common Pleas from the judgment, a review of the order which dismissed the appeal might have been had.

APPEAL from an order of the general term of the Marine Court of the City of New York, reversing a judgment of that court entered upon the verdict of a jury, and directing a new trial.

The action was brought by Arthur A. Brown to recover damages for the alleged conversion by the defendants of six barrels of stock ales, the ownership of which was claimed by Brown, but which, being in the possession of a dealer in liquors named Michael Healy, were levied upon and sold under an execution issued on a judgment recovered by the defendants in this action against Healy. Upon the trial of the action the jury found a verdict for the plaintiff, but on appeal from the judgment entered in his favor, it was reversed and a new trial ordered. The new trial also resulted in a verdict for

Brown *v.* Thurber.

the plaintiff, but the judgment for him was again reversed on appeal and another trial directed. After the second trial the plaintiff died, and the action was continued in the name of his wife, Mary A. Brown, as his assignee. At the third trial, the jury again found a verdict for the plaintiff, and a judgment in her favor was entered thereon. The defendants appealed from the judgment to the general term of the Marine Court, which reversed the judgment, and again ordered a new trial. From this decision the plaintiff appealed to this court.

VAN HOESEN, J.—This case was carefully tried by the experienced justice who presided at the trial term of the Marine Court, and there are no errors which I have been able to discover in his charge or in his rulings during the trial. He clearly stated to the jury the questions of fact on which they were to pass, and the rules of law applicable to the facts. I can find nothing in the case to justify the assertion of the respondent that questions of law were submitted to the jury for decision. Counsel for both parties felt it to be their duty to present, at the close of the evidence, a long-drawn-out series of prayers for instructions, but the gist of most that was valuable in them is found in the concluding words of Justice McADAM's charge: "Let me repeat, that if these ales were to form part of Healy's stock in trade as a retail dealer, and were to be used or sold by him, as he used and sold other portions of his stock, the plaintiff cannot recover. I cannot make myself understood any plainer than that."

That was the simple question which the jury was to decide, and which it did decide in favor of the plaintiff, who is now before this court as the appellant. The verdict of the jury has been reviewed by the general term of the Marine Court, and has been declared by that tribunal—whose decision upon the matter is final—not to be against the weight of evidence. The judgment of the trial term was reversed, and a new trial ordered, not because the verdict was not supported by the evidence, but because of some supposed errors of law found in the case. It is said by the respondent that there was absolutely no evidence to support the verdict, and that upon the

uncontroverted facts the court should have directed a verdict for the defendant. In answer to this, it may be observed that three juries have, at different times, found for the plaintiff, and that the court below, both at special and at general term, has refused to disturb the verdict as against the weight of evidence. After a careful reading of the evidence, I have been led to the conclusion that there is enough to sustain the verdict, though had the case been submitted to me, I should probably have decided in favor of the defendant. A strong impression has been left upon my mind that the unspoken understanding between Brown and Healy was that Healy might sell the ales as his trade required, and pay for them from time to time, as he retailed them to his customers. But if I should so hold, I should be compelled to reject as unworthy of credit evidence which the jury had a perfect right to believe and to found their verdict upon. It cannot be said that the verdict is wholly unsustained by evidence.

We are then to examine the case in order to ascertain if any errors of law were committed in the court below which required the reversal of the judgment rendered at the trial term. The principal reliance of the respondent appears to be on the point that Mary A. Brown, the plaintiff, could not acquire by a conveyance directly to her from her husband any title to the subject of this action, or to any other property whatsoever, which a court of law without equity powers could either assist her in establishing, or regard otherwise than as void. Whilst he is compelled to admit that the courts of New York have taken cognizance of actions in which the wife has sued to recover upon a claim assigned to her by her husband without the intervention of a trustee, the counsel for the respondent contends that such actions have been maintained only by courts possessing equity powers, and that a court with common law jurisdiction merely is now, as it was before the changes in our legislation, compelled to pronounce null and void any conveyance made by the husband directly to the wife. The decisions of the court of last resort do not sustain that view of the law. In *Kelly* v. *Campbell* (2 Abb. App. Dec. 494), the Court of Appeals said: "A gift by a husband to a wife will be upheld,

Brown *v.* Thurber.

where the rights of creditors are not in question, without the aid of the statutes of 1848, or 1849, or 1860, or 1862." In *Rawson* v. *Pennsglvania R. R. Co.* (48 N. Y. 216), where the wife sued to recover the value of certain property given directly to her by her husband, the court said : "Prior to the recent legislation in this state in reference to the rights of married women, gifts of personal property from husband to wife would be upheld in equity, though void at common law, and such gifts could be impeached only by creditors. In equity the property would be treated as the wife's separate estate, and she would be protected in its enjoyment and possession, even against the interference of her husband. This estate, under the statutes of 1848, 1849, 1860 and 1862, if not absolutely converted into a legal estate, is clothed with all the incidents of a legal estate, and she is the proper person to sue and be sued in reference thereto."

In *Seymour* v. *Fellows* (77 N. Y. 178), the Court of Appeals, in an action brought by the wife to recover for the wages of her husband, a claim for which had been assigned to her, said : "The appellant objects that the assignment of the cause of action, having been made directly to the plaintiff by her husband, is void. The rights of creditors are not in question, and we think the court below properly overruled the objection." In *Thompson* v. *The Commissioners* (79 N. Y. 54), where the wife as the grantee of her husband sought to redeem lands from a sale under foreclosure, it was objected that she could not sustain the action because she acquired no title by a conveyance directly from her husband to herself, but the court said : "Under recent legislation the husband has a right to convey to his wife," and cited chapter 172 of Laws of 1862, and 76 N. Y. 262. The latest decision of the Court of Appeals, as will be seen from the case last cited, is that the act of 1862 gave the husband the right to convey to his wife, but independently of that decision, the case of *Rawson* (48 N. Y. 212) is clear and express upon the point that a conveyance from the husband gives to the wife, under the statutes already referred to, if not a legal estate, at least an estate clothed with

all the incidents of a legal estate, including the right to sue and the liability to be sued.

Whether the conveyance by the husband to the wife gives her a legal estate, or merely an equitable estate with the incidents of a legal estate superadded, the result is the same, for in either event she has the right to sue in a court of law.

It is next objected by the respondent that the claim in suit, which is for the value of ales converted by the defendants, is not one of the claims embraced by the conveyance on which the plaintiff relies. The conveyance transferred to the plaintiff the ales specified therein, certain materials used in brewing, horses, trucks, safes, office furniture, and " all book accounts, bills receivable, judgments, claims and demands whatsoever, due or belonging to the grantor." It is conceded that the first rule of construction is to seek the intention of the parties to the instrument, but it is said that that intention is to be ascertained by applying another rule, that where general words follow particular ones, they must be construed as limited to subjects *ejusdem generis.* Without saying that that rule is applicable to this instrument, when the question of its construction arises between a grantee and a defendant sued for the conversion of a part of the property alleged to be embraced in the conveyance, it is sufficient to observe that a claim *in suit* which is expected to ripen into a judgment, is, without serious doubt, *ejusdem generis* as a judgment; and, therefore, there was no error in the decision of the justice at the trial term, that the conveyance transferred to the plaintiff the claim in this action.

All the objections made to the admission of the testimony of Arthur A. Brown, or of any parts of it, are answered by the stipulation found at folio 5 of the case, which provides that either party might read from the printed case used on the trial, the evidence which Brown gave at a former trial. The stipulation is unqualified in its language, and under it no objection to the testimony could properly be entertained. The defendant, if he supposed any of the testimony to be incompetent, should have so framed his stipulation as to reserve the right to object to it.

Taken as a whole, the charge fully and correctly stated the

Brown v. Thurber.

law.   It is true that there was no testimony which in so many
words stated that the agreement between Brown and Healy
was, that Healy might use a single cask without paying for it in
advance, but that he should not use any more till that cask had
been paid for ; and the charge would be less obnoxious to criti-
cism if the plaintiff's seventh, fifth, sixth and tenth requests
had been unqualifiedly refused ; but with the qualifying lan-
guage used by the judge in disposing of those requests, taken in
connection with the rest of the charge, I do not see how the
jury could possibly have been misled.   It is impossible to read
the charge, and the observations made by the judge in passing
upon the swarm of requests which darkened the close of the
trial, without seeing that never for an instant were the jury
permitted to withdraw their attention from the point on which
the case turned.   The was no misunderstanding the question :
did Healy have Brown's leave, express or implied, to sell the
ales in the cellar as he sold the liquors in the shop ?

The order continuing the action in the name of Mary A.
Brown was entered on the 1st of November, 1879.   The de-
fendants did not appeal from it until December 31st, 1879.
The Marine Court general term dismissed that appeal on the
27th of January, 1880.   After the dismissal of that appeal, the
defendants could not obtain a review of the order by the Ma-
rine Court general term.   It is probable that on the appeal
from the judgment to this court, the defendants could have
obtained a review of the order which dismissed the appeal,
and a reversal of that order would have been followed by a
hearing of the merits of the order at special term which al-
lowed the action to be continued in the name of Mary A.
Brown.   But after the appeal had been dismissed by the Ma-
rine Court general term, the special term order was not review-
able, unless the order of dismissal were first vacated.   It was
erroneous, therefore, for the Marine Court general term, on
the hearing of the appeal from the judgment, to reverse, as,
perhaps, it did reverse, the order continuing the action, and it
was also erroneous to reverse the judgment, as, perhaps, it
did, on account of the supposed error in the making of that
order.   It must not be supposed that the other points made

by the parties have not been examined because they are not discussed. I think the order granting a new trial should be reversed, and that the judgment of the trial term should be affirmed with costs.

CHARLES P. DALY, Ch. J., and J. F. DALY, J., concurred.

Order reversed, and judgment of trial term of Marine Court affirmed, with costs.