JONAS JOHNSON, PLAINTIFF, *v.* LYDIA E. ROGERS AND GEORGE W. ROGERS, DEFENDANTS

*Deed from a husband to a wife is void at law — when it will not be sustained in equity.*

On September 13, 1862, Abel Easterbrooks, for the nominal consideration of one dollar, executed, and delivered to his wife a deed of certain premises, which was duly recorded. January 15, 1865, the wife died. January 30, 1865, Easterbrooks conveyed the premises to his daughter, under whom the defendants claim. The plaintiff, an illegitimate son of the deceased wife, brought this action in ejectment to recover the possession of the land.

*Held*, that it could not be maintained as an action at law, because the wife could not receive a conveyance of real estate from her husband.

That it could not be maintained as a suit in equity, because the facts disclosed were not such as to call for the interposition of a court of equity.

MOTION for judgment upon a verdict of the jury in favor of the plaintiff directed by the court at the Steuben Circuit, the exceptions having been ordered to be heard at the General Term in the first instance and judgment to be in the meantime suspended.

*E. C. English*, for the plaintiff.

*A. S. Kendall*, for the defendants.

HAIGHT, J.:

Abel Easterbrooks, on September 13, 1862, was the owner in fee and in possession of the lands in question. On that day he executed and delivered to Elizabeth Easterbrooks, his wife, a deed thereof, without consideration other than one dollar as expressed therein, and the same was recorded in the office of the clerk of the county. Easterbrooks and his wife lived together as husband and wife upon other lands' owned by him until the death of Mrs. Easterbrooks, January 15, 1865. On the 30th of January, 1865, Easterbrooks conveyed the premises in question by deed to his daughter Louisa Smith. The defendants are in possession as grantees under her. The plaintiff was the illegitimate son of Elizabeth Easterbrooks, and her only heir-at-law. He now brings this action in ejectment to recover the possession of the premises. Whether or not Mrs. Easterbrooks died intestate does not appear.

The question presented for our determination is the validity of the deed from Abel Easterbrooks to his wife Elizabeth Easterbrooks. In other words, can a husband deed to his wife? The authorities are conflicting and leave the question in doubt. In the case of *Meeker* v. *Wright* (76 N. Y., 262), the argument of DANFORTH, J., would seem to support the deed, but his opinion was not concurred in by a majority of the court. In the case of *Thompson* v. *The Commissioners, etc.* (79 N. Y., 54–63), the plaintiff at the time of the execution of the mortgage was the owner in fee of one-third of the premises. She subsequently received a deed from her husband of the other two-thirds. It was held that the defendants were not in a position to raise the question as to plaintiff's right as grantee of her husband; and MILLER, J., in concluding his opinion, says: "Under recent legislation the husband has a right to convey to his wife," citing the case of *Meeker* v. *Wright* (*supra*). In the case of *Bertles* v. *Nunan* (92 N. Y., 152), EARL, J., in delivering the opinion of the court, says that the common-law disability of husband and wife, growing out of their unity of person, to convey to each other still exists.

Inasmuch as the determination of this question was not necessarily

involved in the case of *Bertles* v. *Nunan*, we must regard the question as unsettled by the Court of Appeals and consequently open for consideration in this court. At common law neither husband nor wife could convey to each other for the reason that in law they were regarded as one person. It thus becomes a question as to how far the unity of person between husband and wife has been abrogated by the statutes upon that subject. And in construing these statutes we must bear in mind the rule that statutes changing the common law must be strictly construed, and that the common law must be held no further abrogated than the clear import of the language of the statute absolutely requires.

Section 3 of chapter 200 of the Laws of 1848, as amended by chapter 375 of the Laws of 1849, is as follows : " Any married female may take by inheritance or by gift, grant, devise or bequest, from any person other than her husband, and hold to her sole and separate use, and convey and devise real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband nor be liable for his debts."

Under this statute the married female may take and hold property, real and personal, by inheritance, gift, grant, devise or bequest from any person other than her husband. The words " other than her husband " leaves her without power to take from him other than that which she before possessed at common law. This statute does not purport or intend to abrogate the unity of person farther than to prevent the disposal of the wife's property by the husband, or of making the same liable for his debts. Under this statute, the disability of the husband and wife to take lands by conveyance from each other, has been expressly held in the case of *Winans* v. *Peebles* (32 N. Y., 423) and *White* v. *Wager* (25 id., 328). But it is contended that this statute has been subsequently amended, and that consequently these authorities are no longer applicable.

The first act bearing upon the question is that of chapter 90, Laws of 1860, the first section of which provides that the property, both real and personal, which any married woman now owns as her sole and separate estate, that which comes to her by descent, devise, bequest, gift or grant, that which she acquires by her trade, busi-

ness, labor or service carried on or performed on her sole and separate account, etc., shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested by her in her own name, etc.

Section 2 of the act provides that she "may bargain, sell, assign and transfer her separate personal property and carry on any trade or business, etc., on her sole and separate account."

Section 7 provides that she may " sue and be sued in all matters having relation to her property, which may be her sole and separate property, or which may hereafter come to her by descent, devise, bequest, or the gift of any person *except her husband*, in the same manner as if she were sole."

Section 8 provides that her bargains and contracts in reference to her separate property and that which comes to her from any person *except her husband*, shall not be binding upon her husband or render him or his property in any manner liable therefor.

There is no provision in this chapter repealing or amending section 3 of the Laws of 1849. There is nothing in the provisions of the chapter which amends or repeals the former act by implication. It is true that the words " other than her husband " do not appear in section 1 of the act; but that section does not purport to give to the married female any other or greater powers to take and hold property than she before possessèd. The chief purpose and object of this later legislation evidently was to empower her to use, collect and invest in her own name her separate property, without the interference or control of her husband, and to empower her to bargain, sell, assign and transfer the same, and to carry on a separate trade or business of her own. In short the acts of 1848 and 1849 gave to the married female the right to take and hold property in her own name, and the act of 1860 gave her the right to manage it and carry on a separate business, and to sue and to be sued in reference to her property; that it was not the intention of the legislature to amend section 3 by striking out the words " other than her husband," we think is clearly apparent from the fact that in sections 7 and 8 the words " except her husband " were still retained.

The next legislation upon the question is by chapter 172 of the Laws of 1862. That act amends section 7 of the Laws of 1860 by leaving out the words "except her husband." It also amends sec-

tion 8, but retains the words " except her husband." Section 3 of the Laws of 1849 is not amended or repealed, and there is nothing in the amendment of 1862 that is in conflict with the provisions of section 3.

It is now argued that because of the amendment of 1862 of section 7, leaving out the words " except her husband," that that discloses a legislative intent to abrogate the common-law rule of unity of person to the extent that a husband may now convey real estate directly to his wife. Such, however, does not appear to us to have been the purpose of the amendment. If it was, why should the words have been retained in section 8 of the act, and why is section 3 of the act of 1849 left unchanged? The reason is quite apparent ; the section (sec. 7, chap. 90 of 1860) provided that " any married woman may, while married, sue and be sued in all matters having relation to her property, which may be her sole and separate property, or which may hereafter come to her by descent, devise, bequest, purchase, or the gift of any person except her husband," etc. Under this provision, while she could sue and be sued in reference to all of the property which she acquired from other sources than her husband, she could not sue or be sued in reference to property that she acquired from him. If, therefore, the husband should, through fraud or conversion, procure money or other property, and then give the same to his wife, the wife would be protected in the retaining of the possession of the property, for, having received it from her husband, she could not be sued therefor. No matter whether she was authorized to take and hold property from her husband, the effect of the act was to prevent her from being sued. It was to remedy this defect that the act of 1862 was passed, in which the words " except her husband " were properly left out of section 7, but still retained in section 8. No other legislation appears to have affected the question. It consequently appears to us that section 3 of the act of 1849 is still in full force, unrepealed, and that the words therein contained, " other than her husband," prevent her from taking title by grant of her husband. That this is so would appear to be the legislative interpretation, for by chapter 472, Laws of 1880, it authorized husband and wife to make partition between each other. If they could previously deed one to the other, then this legislation was unnecessary.

Again, it is claimed on the part of the plaintiff that the deed is good in equity. Without stopping to consider the form of action which he has instituted, we are of the opinion that the facts disclosed by the case are not such as to call for the interposition of a court of equity.

The case of *Hunt* v. *Johnson* (44 N. Y., 27) is the most favorable decision to the plaintiff's claim to which our attention has been called. The conclusions reached by Hunt, commissioner, have been questioned and criticised upon the ground that the authorities upon which he relies do not sustain the position taken by him. (See 13 Alb. L. J., 110.) But conceding the rule to be as he states it, the wife is not here asking to have the deed to her, upon the nominal consideration of one dollar, established by a court of equity, but her illegitimate son, a stranger to Abel Easterbrooks and his daughter, and if a court of equity will not interfere as between persons standing upon the same meritorious consideration, as between wife and child of the grantor, it will not in favor of a stranger who has no claim upon the grantor for support and maintenance. ( *Winans* v. *Peebles, supra ; White* v. *Wager, supra.*)

A new trial should be granted, with costs to abide the event.

CHILDS, J., concurred ; ANGLE, J., *dubitatur.*

Motion for new trial granted, with costs to abide the event.