Ellen Bertles, Respondent, v. James Nunan, Appellant.

Under a conveyance to a husband and wife jointly, they take, not as tenants in common or as joint tenants, but as tenants by the entirety, and upon the death of either, the survivor takes the whole estate.

This common-law doctrine has not been abrogated by the statutory provisions (§ 3, chap. 200, Laws of 1848, amended by chap. 375, Laws of 1849; §§ 1, 2, chap. 90, Laws of 1860, amended by chap. 172, Laws of 1862), enabling a wife to acquire and hold a separate estate and to sell and convey the same. (Danforth and Finch, JJ., dissenting.)

As to whether those provisions apply to lands so conveyed, quære.

So also as to whether the husband still retains the common-law right of control and use of lands so conveyed, during the joint lives.

Feely v. Buckley (28 Hun, 451), overruled.

(Argued March 8, 1883; decided April 17, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of plaintiff, entered upon an order directing such judgment, made March 22, 1882, upon a case submitted under section 1279 of the Code of Civil Procedure.

The facts stated were substantially these: In 1868, Nelson K. Hopkins executed a deed to " Cornelius Day and Hannah Day, his wife  *  *  *  their heirs and assigns," of certain premises situate in the city of Buffalo. In August, 1877, Cornelius Day died leaving his wife surviving him, and after his death, up to her own death, she had the possession of the whole of said premises. She died intestate in April, 1879, and in proceedings instituted by plaintiff, her administratrix, and who was her sole heir at law, an order was made by the surrogate directing the sale of the premises. Upon such sale defendant became the purchaser, but he refused to complete the purchase on the ground that said Hannah Day was never seized of more than an undivided half interest, and, therefore, that plaintiff could not convey a good title. The question submitted was as to whether this objection was tenable.

*Spencer Clinton* for appellant. A deed of land to husband

and wife conveys it to them as tenants in common. (Laws of 1849, chap. 375; Laws of 1860, chap. 90, amended by Laws of 1862, chap. 172; 3 R. S., part 1, chap. 1, title 2, art. 2, § 74 [7th ed.], p. 2179; *F. & M. B'k* v. *Gregory*, 49 Barb. 155; *Barber* v. *Harris*, 15 Wend. 615.) There is no inherent disability in a wife to hold land in common with her husband. (*Moore* v. *Moore*, 47 N. Y. 467.) The husband, by the marriage contract, acquires no vested rights in the future acquisitions of the wife, and the legislature can change them at will. (*Sleight* v. *Reed*, 18 Barb. 159–164; *Blood* v. *Humphrey*, 17 id. 660.)

*Tracy C. Becker* for respondent. At common law, husband and wife were considered as one person, and when land was conveyed to them as such, they held not as joint tenants but each being seized of the whole *per tout et non per my*, so that the survivor takes the whole, not by survivorship but by virtue of the original estate. (*Stuckey* v. *Keefe's Ex'rs*, 26 Penn. St. 397–9; 1 Dana, 244; 7 Yerger, 319; 4 Kent's Com. 362; 2 Blackst. Com. 182; *Jackson* v. *Stevens*, 16 Johns. 110, 115; *Rogers* v. *Benson*, 3 Johns. Ch. 431, 437; *Barber* v. *Harris*, 15 Wend. 615–617; *Jackson* v. *McConnell*, 19 id. 175, 177; *Burn & Dias* v. *Glover*, 1 Hoff. Ch. 76–77; *Doe* v. *Howland*, 8 Cow. 283; *Torry* v. *Torry*, 14 N. Y. 430; *Den* v. *Hardenburgh*, 5 Halst. [N. J.] 42; *Shaw* v. *Hearsay*, 5 Mass. 521; *Whales* v. *Coffin*, 23 id. 215; *Thornton* v. *Thornton*, 3 Rand. [Va.] 179; *Ames* v. *Norman*, 4 Sneed [Tenn.], 683; *Rogers* v. *Grider*, 1 Dana [Ky.], 94; *Cochran* v. *Kerney*, 9 Bush [Ky.], 199; *Gibson* v. *Zimmerman*, 12 Mo. 385; *Fairchild* v. *Chastellux*, 1 Barr. [Penn.] 176; *Johnson* v. *Hart*, 6 W. & S. [Penn.] 319; *Ketchum* v. *Wadsworth*, 5 Wis. 102; *Brownson* v. *Hall*, 16 Vt. 309; *Fisher* v. *Provin*, 25 Mich. 347–351; *Davis* v. *Clark*, 26 Ind. 428; *McDuff* v. *Beauchamp*, 50 Miss. 531; *Greenlaw* v. *Greenlaw*, 13 Me. 182–186; 1 Washburn on Real Property, 278.) By virtue of her relation as wife, in case of a conveyance to a wife and husband, naming them as such, the wife gained a greater right in the property thus conveyed than if conveyed to her alone during coverture, for by

the common law a wife's property was liable for her husband's debts. (Schouler's Dom. Rel. 134; 2 Kent's Com. 134; *Miller* v. *Williams*, 1 P. Wms. 258; *Carterer* v. *Paschal*, 3 id. 351, *a ; Roberts* v. *Palgrean*, 1 H. Bl. 535; 1 Bright on Husband and Wife, 98; *Grute* v. *Lowcroft*, Cro. Eliz. 287; *Jackson* v. *McConnell*, 19 Wend. 175; Co. Inst. 351 *a; * 4 Blackst. Com. 387; *Steed* v. *Cragh*, 9 Mod. 43; 2 Blackst. Com. 421; Co. Litt. 351; 2 Kent's Com. 133; *Jacques* v. *Meth. Ep. Ch.*, 1 Johns. Ch. 450; *S. C. on appeal*, 17 Johns. 548; Roper on Husband and Wife, 182; 2 Story's Eq., § 1392; *Yale* v. *Dederer*, 18 N. Y. 265, 270.) When land was conveyed to husband and wife together, neither could bind the other, and if the wife survived, she took the whole whether any children were born of the marriage, and irrespective of any deed or will or other alienation made by the husband during his lifetime. (*Stuckey* v. *Keefe's Ex'rs*, 26 Penn. St. 401; *Rogers* v. *Benson*, 3 Johns. Ch. 437; *Jackson* v. *Stevens*, 16 Johns. 15; *Den* v. *Hardenburgh*, 5 Halst. 42; *Shaw* v. *Hearsay*, 5 Mass. 521.) As the act of 1848 (Chap. 200), as amended, gave married women only such rights as they would have if unmarried, and an unmarried woman could not convey to her husband or take lands with him, she having no husband, a married woman could not convey to her husband nor hold lands as tenant in common with him. (*White* v. *Wager*, 25 N. Y. 333; *Winans* v. *Peebles*, 32 id. 423; *Goelet* v. *Gori*, 31 Barb. 314; *Meeker* v. *Wright*, 76 N. Y. 267, 271; *Power* v. *Lester*, 17 How. Pr. 413; *S. C. on appeal*, 23 N. Y. 529; *F. & M. B'k* v. *Gregory*, 49 Barb. 162; *Miller* v. *Miller*, 9 Abb. Pr. [N. S.] 444; *Beach* v. *Hollister*, 3 Hun, 519; *Freeman* v. *Barber*, 3 T. & C. 574; *Bates* v. *Seely*, 46 Penn. St. 248; *French* v. *Mehan*, 56 id. 289; *Diver* v. *Diver*, id. 106; *Fisher* v. *Provin*, 25 Mich. 350; *Davis* v. *Clark*, 26 Ind. 428; *McDuff* v. *Beauchamp*, 50 Miss. 531; *Washburn* v. *Burns*, 34 N. J. 18; *Chandler* v. *Cheney*, 37 Ind. 401; *Hulet* v. *Inlow*, 57 id. 412–414; *Marburgh* v. *Cole*, 49 Md. 402.) Conceding that the act of 1862, or even the act of 1848, as amended in 1849, was broad enough to destroy the common-law doctrine of estates

conveyed to husbands and wives, those acts cannot affect marriages contracted before their passage. They are not retro-active. (*Hatfield* v. *Snedon*, 54 N. Y. 280, 287; *Burke* v. *Valentine*, 52 Barb. 412; *S. C.*, 4 Abb. Pr. [N. S.] 164; affirmed by Court of Appeals, 6 Alb. L. J. 167; *Hurd* v. *Cass*, 9 Barb. 366; *Clark* v. *Clark*, 24 id. 581; *Lansing* v. *Gulick*, 26 How. Pr. 250; *Jaycox* v. *Collins*, id. 496; *Ex parte Winne*, 2 Lans. 21; reversing *S. C.*, 1 id. 508, and over-ruling *Billings* v. *Baker*, 28 Barb. 343; *Beamish* v. *Hoyt*, 2 Robt. 307; *Ransom* v. *Nichols*, 22 N. Y. 110; *Barnes* v. *Underwood*, 47 id. 351; *Westervelt* v. *Gregg*, 12 id. 302; *Snyder* v. *Snyder*, 3 Barb. 621; *Holmes* v. *Holmes*, 4 id. 295; *White* v. *White*, id. 474; *Quackenbush* v. *Danks*, 1 Denio, 128; 1 Comst. 129; *Bronson* v. *Kinzie*, 1 How. [U. S.] 311; *McCracken* v. *Hayward*, 2 id. 608; *Morse* v. *Gould*, 11 N. Y. 281; *Edwards* v. *Kearzey*, 96 U. S. 595.) The rule of law should be applied in cases of this character which obtains in England in the matter of personal property, viz.: that where property is purchased by the husband in the joint names of himself and wife, it is presumed to have been a gift and ad-vancement to her, unless evidence of a different intention be adduced. And that the wife, on surviving, will be entitled to such property unless he in his life-time aliens it. (*Kingdon* v. *Bridges*, 2 Vern. 67; *Glaister* v. *Hewer*, 8 id. 99; *Christ's Hospital* v. *Budgin*, 2 id. 683; *Watts* v. *Thomas*, 2 P. Wms. 364; *Coates* v. *Stevens*, 1 Y. & C. Eq. Ex. 66; *George* v. *Bank of England*, 7 Price, 647; *Ridder* v. *Kidder*, 10 Ves. 360; *Lucas* v. *Lucas*, 1 Atk. 270; *Dummer* v. *Pitcher*, 5 Sin. 35; *S. C.*, 2 M. & K. 262, 273; *Low* v. *Carter*, 1 Beav. 426; *Gibson* v. *Todd*, 1 Rawle, 455.) Courts strongly oppose any innovation upon the common-law doctrine of tenancy of the entirety. (*Wright* v. *Sadler*, 20 N. Y. 320; 17 Alb. L. J. 393; 11 id. 375, 402; 20 id. 203; 27 id. 162; 26 Am. Rep. 64; 23 id. 269; Girard's Real Estate Titles [2d ed.], 72, 84; Williams on Real Estate [5th ed.], 225, *n ;* *Whiton* v. *Snyder*, 88 N. Y. 297; *Baker* v. *Lamb*, 11 Hun, 519; *Pollock* v. *Webster*, 16 id. 104; *Matteson* v. *N. Y. C. R. R. Co.*, 62

Barb. 373 ; *Wright* v. *Wright,* 54 N. Y. 437 ; Laws of 1880, chap. 472 ; *Taylor* v. *Young,* 71 Penn. St. 81.)

EARL, J. On the 1st day of August, 1868, certain land, which is the subject of this controversy, was conveyed by deed to Cornelius Day and Hannah Day, his wife, and to their heirs and assigns ; and the sole question for our determination is whether the grantees took the land as tenants in common or whether each took and became seized of the entirety.

By the common law, when land was conveyed to husband and wife they did not take as tenants in common, or as joint tenants, but each became seized of the entirety, *per tout, et non per my,* and upon the death of either the whole survived to the other. The survivor took the estate, not by right of survivorship simply, but by virtue of the grant which vested the entire estate in each grantee. During the joint lives the husband could, for his own benefit, use, possess and control the land, and take all the profits thereof, and he could mortgage and convey an estate to continue during the joint lives, but he could not make any disposition of the land that would prejudice the right of his wife in case she survived him.

This rule is based upon the unity of husband and wife, and is very ancient. It must have had its origin in the archaic period of our race, and it colored all the relations of husband and wife to each other, to the law and to society. In 1 Blackst. Com. 442, the learned author says : "Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties and disabilities that either of them acquired by the marriage. I speak not, at present, of the rights of property, but of such as are merely personal. For this reason a man cannot grant any thing to his wife or enter into covenant with her ; for the grant would be to suppose her separate existence, and to covenant with her would be only to covenant with himself." They were not allowed to give evidence against each other, mainly because of the union of person, for if they were admitted to be witnesses for each other they would contradict one maxim of the common law,

*nemo in propria causa testis esse debet;* and if against each other they would contradict another maxim, *nemo tenetur se ipsum accusare.*

As one of the consequences of the same rule, the husband was made responsible to society for his wife. He was liable for her torts and frauds, and, in some cases, for her crimes.

This, and the other rules regulating the effect of marriage at common law, were not designed to degrade and oppress the wife. Blackstone (2 Com. 445) says : " Even the disabilities which the wife lies under are, for the most part, intended for her protection and benefit; so great a favorite is the female sex of the laws of England."

The common-law rule as to the effect of a conveyance to husband and wife continued in force, notwithstanding the Revised Statutes, which provided that " every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be in joint tenancy." (3 R. S. 2179 [7th ed.]; *Dios* v. *Glover,* 1 Hoff. Ch. 71; *Torrey* v. *Torrey,* 14 N. Y. 430 ; *Wright* v. *Saddler,* 20 id. 320.) In the latter case COMSTOCK, J., said : " It appears to be well settled that this statute does not apply to the conveyance of an estate to husband and wife. They are regarded in law as one person."

But the claim is made that the legislation in this State, in the years 1848, 1849, 1860 and 1862, in reference to the rights and property of married women, has changed the common-law rule so that now when land is conveyed to husband and wife they take as tenants in common, as if unmarried. In construing these statutes the rule must be observed, and usually has been observed, that statutes changing the common law must be strictly construed and that the common law must be held no further abrogated than the clear import of the language used in the statutes absolutely requires.

Section 3 of chapter 200 of the Laws of 1848, as amended by chapter 375 of the Laws of 1849, provides that " any married female may take by inheritance or by gift, grant, devise or bequest, from any person other than her husband, and hold

to her sole and separate use, and convey and devise, real and personal property, or any interest or estate therein, and the rents, issues and profits thereof in the same manner and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband or be liable for his debts." It is not the effect of this section, and plainly was not its purpose to change the force and operation of a conveyance to a wife. It does not enlarge the estate which a wife would otherwise take in land conveyed to her, and whatever the effect of a conveyance to a husband and wife was prior to that statute, so it remains. If the operation of such a conveyance was to convey the entire estate to each of the grantees, so that each became seized of the entirety, there is nothing in the force or effect of the language used to change the operation of such a deed so as to make the grantees tenants in common. The section gives the wife no greater right to receive conveyances than she had at common law, but its sole purpose was to secure to her during coverture, what she did not have at common law, the use, benefit and control of her own real estate, and the right to convey and devise it as if she were unmarried.

By section 1 of the act (Chapter 90 of the Laws of 1860) it is provided that " the property, both real and personal, which any married woman now owns as a sole and separate property; that which comes to her by descent, devise, bequest, gift or grant; that which she acquires by her trade, business, labor or services, carried on or performed on her sole and separate account; that which a woman married in this State owns at the time of her marriage, and the rents, issues and profits of all such property, shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested by her in her own name, and shall not be subject to the interference or control of her husband, or liable for his debts; " and in section 3 of the act of 1860, as amended by the act chapter 172 of the Laws of 1862, it is provided that " any married woman possessed of real estate as her separate property may bargain, sell and con-

vey such property, and enter into any contract in reference to the same, with the like effect, in all respects, as if she were unmarried." There is great plausibility in the claim that these provisions in the acts of 1860 and 1862 have reference only to the separate property of a wife, which she owns separate from her husband, and that they have no reference whatever to land conveyed to husband and wife, in which, by the common law, each became seized of the entirety. The language is not so strong and direct as that of the Revised Statutes, which provided that a grant to two or more persons shall create a tenancy in common, and which was yet held not to make husband and wife tenants in common. But it is not necessary now to determine that these provisions of law do not apply to lands conveyed to husband and wife, and we pass that question. It is sufficient now to hold that they do not limit or define what estate the husband and wife shall take in lands conveyed to them jointly. Their utmost effect is to enable the wife to control and convey whatever estate she gets by any conveyance made to her solely or to her and others jointly.

The claim is made that the legislation referred to has destroyed the common-law unity of husband and wife, and made them substantially separate persons for all purposes. We are of the opinion that the statutes have not gone so far. The legislature did not intend to sweep away all the disabilities of married women depending upon the common-law fiction of a unity of persons, as a brief reference to the statutes will show. The act of 1848 gave no express authority to a married woman to grant or dispose of her property ; such authority came by the act of 1849. The legislature clearly understood that the common-law unity of husband and wife, and the disabilities dependent thereon still remained, notwithstanding those acts, because in 1860, by the act of that year, it empowered a married woman to perform labor and to carry on business on her separate account; to enter into contracts in reference to her separate real estate ; to sue and be sued in all matters having relation to her property, and to maintain actions for injuries to her person. Until 1867 (Chap. 782) husbands retained their

common-law right of survivorship to the personal property of their wives. It was not until chapter 887 of the laws of the same year, that husband and wife could, in civil actions, be compelled to give evidence for or against each other; and in 1876 (Chap. 182), for the first time, they could be examined in criminal proceedings as witnesses for each other; and provision was first made in the Penal Code (§ 715) that they could, in criminal proceedings, be witnesses for and against each other.

From this course of legislation it is quite clear that the legislature did not understand that the common-law rule as to the unity of husband and wife had been abrogated by the acts of 1848, 1849 and 1860, and that whenever it intended an invasion of that rule, it made it by express enactment. Still more significant is the act chapter 472 of the Laws of 1880, which provides that " whenever husband and wife shall hold any lands or tenements as tenants in common, joint tenants or as tenants by entireties, they may make partition or division of the same between themselves," by deeds duly executed under their hands and seals. Here the disability of husband and wife, growing out of their unity of person, to convey to each other is recognized, as is also the estate by entireties created by a deed to them jointly.

So the common-law incidents of marriage are swept away only by express enactments. The ability of the wife to make contracts is limited. Her general engagements are absolutely void, and she can bind herself by contract only as she is expressly authorized to do so by statute. A husband still has his common-law right of tenancy by the curtesy. Although section 7 of the act of 1860 authorizes a married woman to maintain an action against any person for an injury to her person or character, yet we have held that she cannot maintain an action against her husband for such an injury; and so it was held, notwithstanding the acts of 1848, 1849 and 1860, that the common-law disability of husband and wife growing out of their unity of person to convey to each other still existed. ( *White* v. *Wager*, 25 N. Y. 333; *Winans et al.* v. *Peebles et al.*, 32

id. 423; *Meeker* v. *Wright*, 76 id. 262, 270.) It is believed, also, that the common-law rule as to the liability of the husband for the torts and crimes of his wife are still substantially in force.

We fail, therefore, to find any reason for holding that the common-law rule as to the effect of a conveyance to husband and wife has been abrogated, and this conclusion is sustained by considerable authority. In *Goelet* v. *Gori* (31 Barb. 314), SUTHERLAND, J., at Special Term, held that a lease for a term of years, executed to husband and wife, was unaffected by the acts of 1848 and 1849, and that husband and wife by conveyances to them still took as tenants by the entirety. In *Farmers and Mechanics' National Bank of Rochester* v. *Gregory* (49 Barb. 155) it was held at General Term that the statutes referred to had no relation to or effect upon real estate conveyed to husband and wife jointly, and that in the case of such a conveyance, notwithstanding those statutes, they take as tenants by the entirety. JOHNSON, J., commenced his opinion by saying: " To my mind it is a very clear proposition that our recent statutes for the better protection of the separate property of married women have no relation to or effect upon real estate conveyed to husband and wife jointly." That decision was rendered in 1867, and the conveyance which was there the subject of consideration was executed in 1864. In *Miller* v. *Miller* (9 Abb. Pr. [N. S.] 444) MURRAY, J., at Special Term, in 1871, feeling bound by the decision last referred to, held, that the common-law rule was applicable to a conveyance made to husband and wife in 1867. In *Freeman* v. *Barber* (3 N. Y. Sup. Ct. [T. & C.] 574) the same rule was applied in 1874 by the Supreme Court in the third department. The opinion of the court was written by MILLER, P. J., in which he stated that he regarded the law as settled in this State that, in the case of a conveyance to husband and wife, they take, not as joint tenants or as tenants in common, but as tenants by entireties, notwithstanding the acts referred to. In *Beach* v. *Hollister* (3 Hun, 519), decided in 1875, a similar decision was made. GILBERT, J., writing the opinion

of the court, said : " These statutes operate only upon property which is exclusively the wife's, and were not intended to destroy the legal unity of husband and wife, or to change the rule of the common law governing the effect of conveyances to them jointly." In *Ward* v. *Crum* (54 How. Pr. 95), decided in 1876, VAN VORST, J., at Special Term, held that under a deed executed to husband and wife in 1872, both became seized of the entirety, although the wife paid the entire consideration of the conveyance.

It is true that these decisions are not absolutely binding upon this court, but they settled the law in the Supreme Court. For twenty years after 1849 there was no decision or published opinion in this State in conflict with them, and they are, under the circumstances, entitled to great weight here. They undoubtedly lay down a rule which has been followed and observed by conveyancers, and we have no doubt that property to the value of millions is now held under conveyances made in reliance upon the common-law rule as thus expounded. These decisions were never questioned in this State by any court until the decision in the case of *Meeker* v. *Wright*, which was rendered in this court in 1879 (76 N. Y. 262). In that case the learned judge writing the opinion reached the conclusion that the common-law rule governing conveyances to husband and wife had been abrogated by the modern legislation in this State. But that portion of the opinion was not concurred in by a majority of the judges. The views of that judge were very forcibly and ably expressed, and they have been carefully reconsidered. They do not convince us that the conclusions he reached should be adopted by this court. That case is supposed to have unsettled the law somewhat in this State. In *Feely* v. *Buckley* (28 Hun, 451) it was held upon its authority, by a divided court, that tenancy by the entirety is abrogated by the Married Women's Acts ; and upon the same authority it is said a similar holding was made in *Zorntlein* v. *Brown*, decided in the Superior Court of New York, in January of this year, by a divided court. It is also said that in *Forsyth* v. *McCall*, in the fourth depart-

ment in June, 1880, and in *Meeker* v. *Wright*, after a new trial, in the third department, in April, 1882, it was decided that the common-law rule was not abrogated. (27 Albany Law Journal, 199.) And these decisions, together with the one which is now under review, are all the decisions made in this State since the case of *Meeker* v. *Wright* was in this court, which have come to our attention.

Legislation similar to that which exists in this State, as to the rights and property of married women, exists in many of the States of the Union, and the decisions are nearly uniform in all the other States where the question has arisen, that a conveyance to husband and wife has the common-law effect, notwithstanding such legislation. Without citing all we call attention to the following cases and authorities: *Bates* v. *Seeley* (46 Penn. St. 248), *French* v. *Mahan* (56 id. 289), *Diver* v. *Diver* (id. 106), *Fisher* v. *Peovin* (25 Mich. 350), *McDuff* v. *Beauchamy* (50 Miss. 531), *Washburn* v. *Burns* (34 N. J. 18), *Chandler* v. *Cheney* (37 Ind. 391), *Morburgh* v. *Cole* (49 Md. 402 ; 33 Am. Rep. 266), *Bennett* v. *Child* (19 Wis. 362), *Robinson* v. *Eagle* (29 Ark. 202 ; 1 Washb. on Real Prop. [3d ed.] 577; Schouler on Husband and Wife, §§ 397, 398 ; 1 Bishop on the Laws of Married Women, 438, §§ 613, etc.; 2 id. 284, § 284). In the last section the learned author says: "Under the late married women's statutes, the effect of which is to prevent any part of the wife's interest in her lands passing to her husband, the rule of the common law, by force of which the two became tenants by the entirety of lands conveyed to both, is not changed," and he says : "The reason for the doctrine, looking at the question in the light of legal principle, is, that the statutes which preserve to married women their separate rights of property do not have, or profess to have, any effect upon the capacity of the wife to take property, or the manner of her taking it, but when she does take it they simply preserve the right in her, to her separate use, forbidding it to pass in part or in full to her husband under the rules of the unwritten law. If, then, land is conveyed to a husband and his wife, they take precisely as at the com-

mon law — that is, as tenants by the entirety." In *Diver* v. *Diver*, STRONG, J., said: "But it is said the act of 1848, by destroying the legal unity of the husband and wife, has converted such an estate into a tenancy in common; that is, that such a deed conveys a different estate from that which the same deed would have created if made prior to the passage of the act. To this we cannot assent. It mistakes alike the letter and the spirit of the statute, imputing to it a purpose never intended. The design of the legislature was single. It was not to destroy the oneness of husband and wife, but to protect the wife's property, by removing it from under the dominion of the husband. To effect this object she was enabled to own, use and enjoy her property, if hers before marriage, as fully after marriage as before, and the act declared that if her property accrued to her after marriage, it should be owned, used and enjoyed by her as her own separate property, exempt from liability for the debts and engagements of her husband. All this had in view the enjoyment of that which is hers, not the force and effect of the instrument by which an estate may be granted to her. It has nothing to do with the nature of the estate. The act does not operate upon rights accruing to her until after they have accrued. It takes such rights of property as it finds them, and regulates the enjoyment, that is the enjoyment of the estate after it has vested in the wife."

At common law where the estate was conveyed to husband and wife, as above stated, the husband had the control and use of the property during the joint lives. It is unnecessary now to determine whether, under the Married Women's Acts in this State, the husband still has such a right in real estate conveyed to him and his wife jointly. It was said in some of the authorities cited that the statutes had changed that common-law rule, and that while husband and wife, in conveyances to them jointly, each took the entirety, yet that the land could not be sold for the husband's debts, or the use and profits thereof during their joint lives be entirely appropriated by him. It is not important in this case to determine what the relation of

the wife to the land, in such a case, now is, during the life of her husband.

It is said that the reason upon which the common-law rule under consideration was based has ceased to exist, and hence that the rule should be held to disappear. It is impossible, now, to determine how the rule, in the remote past, obtained a footing, or upon what reason it was based, and hence it is impossible now to say that the reason, whatever it was, has entirely ceased to exist. There are many rules appertaining to the ownership of real property originating in the feudal ages, for the existence of which the reason does not now exist, or is not discernible, and yet, on that account, courts are not authorized to disregard them. They must remain until the legislature abrogates or changes them, like statutes founded upon no reason, or upon reasons that have ceased to operate.

It was never, we believe, regarded as a mischief, that under a conveyance to husband and wife they should take as tenants by the entirety, and we have no reason to believe that it was within the contemplation of the legislature to change that rule. Neither do we think that there is any public policy which requires that the statute should be so construed as to change the common-law rule. It was never considered that that rule abridged the rights of married women, but rather that it enlarged their rights, and improved their condition. It would be against the spirit of the statutes to cut down an estate of the wife by the entirety to an estate as tenant in common with her husband. If the rule is to be changed it should be changed by a plain act of the legislature, applicable to future conveyances; otherwise incalculable mischief may follow by unsettling and disturbing dispositions of property made upon the faith of the common-law rule. The courts certainly ought not to go faster than the legislature in obliterating rules of law under which many generations have lived and flourished and the best civilization of any age or country has grown up.

We are, therefore, of opinion that the judgment should be affirmed, with costs.

All concur, except DANFORTH and FINCH, JJ., who dissent

upon the ground that the common-law doctrine was abrogated by the statutes which enable a wife to hold a separate estate, and for the reasons stated by the former in *Meeker* v. *Wright*,* and his dissenting opinion in *Schultz* v. *Schultz*.†

Judgment affirmed.