NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—December, 1886.

MATTER OF BROOKS.

*In the matter of the estate of* JOHN A. BROOKS,
*deceased.*

At the time of decedent's death, there was on deposit, in a savings bank, to the joint credit of himself and wife, a sum of over $1,900, which the widow, after her appointment as administratrix, withdrew from the bank, and one half of which, less $150 set apart for her benefit, was included in an inventory of decedent's property.—

*Held,* that an exception to a finding that the amount of the deposit was the joint property of decedent's estate and his widow, and that, in the absence of evidence as to the respective proportions, the latter was accountable as administratrix, for only one half thereof, should be overruled.

The disposition of moneys paid, at a decedent's death, by benefit associations whereof he was a member, is governed by the regulations of those associations, such moneys not constituting assets of his estate.

A widow of a decedent, who is appointed administratrix of his estate, cannot be allowed credit for payment of her husband's funeral expenses, where she has received, as "funeral expenses," from "benefit associations," more than the amount paid out by her in such behalf.

HEARING of exceptions to report of referee, to whom were referred the account, and objections thereto, of the administratrix of decedent's estate, filed in proceedings for judicial settlement.

ROBERT O'BYRNE, *for administratrix.*

P. Q. ECKERSON, *for Christopher Brooks, and others.*

A. H. VANDERPOEL, *special guardian.*

THE SURROGATE.—To the account filed by this administratrix in December, 1885, certain objections were interposed by three adult children of the dece-

dent, and by the special guardian of two infants interested in his estate. The issues thus raised were submitted to a referee, whose report is before me. I pass upon the various exceptions to his findings and conclusions as follows:

*First.* It appears that at the time of decedent's death there was in the hands of the Hudson City Savings Institution, to the joint credit of himself and his wife, now his widow and administratrix of his estate, the sum of $1,929.04, and that the widow, as such administratrix, subsequently withdrew those moneys from their place of deposit. It further appears that one half of such moneys (less the sum of $150 set apart, pursuant to law, for the widow's benefit) was included in an inventory filed by her as administratrix, and was appraised as assets of her husband's estate.

The referee has found this deposit of $1,929.04 to be " the joint property of the estate of John A. Brooks and Eliza A. Brooks," the widow, and has held that " in the absence of any evidence as to the respective proportions of each, the administratrix is chargeable with only one half of the amount of such deposit." It is insisted by the executors that she is chargeable with the whole.

Under the circumstances disclosed by the evidence, it seems to me that if the referee has erred at all in this matter he has erred in favor of the contestants. Surrogate BRADFORD held, in Rom. Cath. Orphan Asylum v. Strain (2 *Bradf.*, 27), that a deposit of moneys in the joint name of husband and wife with the privity of the husband must be taken as *prima facie* a gift of such moneys to the wife in the event of her surviving

her husband, and that where such deposit had been left undisturbed by the husband, the moneys became on his decease the property of his wife.

The doctrine of the case just cited was recently asseverated by the Supreme court, in the Second Department in Platt v. Grubb (1 *State Rep.*, 494). The moneys on joint deposit which were there held to have become the property of a wife at the death of her husband were distinctly found to have belonged, before the making of such deposit, to her husband alone. And yet DYKMAN, J., declared, in pronouncing the opinion of the court: " By reason of the unity of husband and wife in the view of the law an obligation taken in the name of both inures to the benefit of both and the whole goes to the survivor." . . . . " This old rule of law," he added, " is still prevalent in this State," citing Bertles v. Nunan (92 *N. Y.*, 152) and Sanford v. Sanford (45 *N. Y.*, 723 ; 58 *N. Y.*, 72).

It was held by the Courts of Appeals in the latter case that, where a husband had loaned money, the taking by him of a promissory note for its payment to the order of himself *and* his wife, imported a gift to his wife in case she should survive him. It was further held, upon the second appeal, that " the fact that she (the widow) gave the note to the appraisers as a part of her husband's estate, while it is evidence tending to show that she had released to him her right of survivorship, is not conclusive, and does not stop her from claiming the note, in the absence of evidence that the position of any party has been

changed in consequence, or that any transaction was had in reliance thereon."

From the testimony of the administratrix in the case at bar it appears that, in drawing the moneys in dispute from the bank where they were deposited, she acted in her capacity as administratrix because the officer of the bank told her to do so, and she "obeyed his order."

There is nothing at variance with the principle governing the case above cited in the decisions of Mulcahey v. The Emigrant's Industrial Sav. Bank (89 *N. Y.*, 435); Gelster v. The Syracuse Savings Bank (17 *Week. Dig.*, 137); or Syracuse Sav. Bank v. Hess (23 *Week. Dig.*, 280). The exceptions which relate to the item of $1,929.04 must be overruled.

*Second.* The decedent in his lifetime was the member of several lodges and associations, by the provisions of whose constitutions and bylaws certain sums of money, amounting in all to $321, were paid after his death to his widow. She has charged herself with none of these moneys, and the referee has held that she is not liable to account for them in this proceeding.

From Chelsea Division No. 12 of the Sons of Temperance she received $50. By the constitution and bylaws of that society it is provided that in case of the death of a member the sum of $50 shall be appropriated as a "funeral benefit," and shall be paid "to the family of the deceased."

From the Mamre Encampment, I. O. of O. F., Mrs. Brooks received $40, the sum which under its constitution was payable upon her husband's death as a

" funeral benefit " and to assist in defraying the expenses of burial."

Eureka Encampment No. 177, I. O. O. F., paid her $100, that being the amount which in accordance with its constitution and bylaws was payable " to the widow " of a deceased member.

Mrs. Brooks received from the Fidelity Temple of Honor and Temperance the sum of $50. The bylaws of that association provide that a sum no less than that shall be appropriated for the funeral expenses of a deceased member and paid to the wife or immediate relatives or expended by an officer of the society in paying such bills as shall be contracted for a funeral.

The Chelsea Mutual Benefit Association paid Mrs. Brooks $81, pursuant to one of its bylaws, which provides that in the event of the death of a member " the sum of one dollar, for each and every member, shall be paid to the family of the deceased."

I think that the referee has properly held that the administratrix is not here accountable for any of these payments. It is well settled by numerous decisions that the disposition of moneys paid at a decedent's death by benefit associations, whereof he was a member, must be determined entirely by the constitutions and bylaws of such associations, and that such moneys are not assets of such decedent's estate (Greeno v. Greeno, 23 *Hun*, 478; Brown v. Catholic Mut. Ben. Ass'n, 33 *Hun*, 263; *In re* Palmer, 3 *Dem.*, 129; Hellenberg v. B'Nai Berith, 94 *N. Y.*, 580).

*Third.* The referee has found that the administratrix is entitled to credit on account of sums paid out

by her as funeral expenses. The testimony shows that within six months after the decedent's death his widow received from the four associations first above named, as "funeral benefits" and "funeral expenses," a sum in excess of that for which in this account she claims credit.

It is true, that at the time these moneys were received the funeral expenses had been fully satisfied, but I think nevertheless that their reception must be considered as a reimbursement to the administratrix of any sum previously expended by her in connection with her husband's funeral (Leidenthal v. Correll, 5 *Redf.*, 267).

With the modifications above indicated the referee's report is confirmed.