MARY A. TALLINGER, Appellant, *v.* AUSTIN MANDE-VILLE and Others, as Executors, etc., of GODFREY TALLINGER, Respondents.

*Agreement between a husband and wife for a separation — when an acceptance of a sum named therein defeats the right of the wife to claim under an ante-nuptial agreement.*

Upon the trial of this action, brought by the plaintiff upon an ante-nuptial agreement made between the plaintiff and the defendants' testator, by which the latter agreed that the plaintiff should, at his death, be paid the sum of $10,000, evidence was given showing that on July 20, 1882, they entered into an agreement for a separation, in consideration of which, and of the cancellation and abrogation of the ante-nuptial agreement to pay her $10,000, the testator agreed to and did pay to her $5,000, which she agreed to accept in satisfaction of her claim to the $10,000, which she was entitled to receive under the ante-nuptial agreement. The parties thereafter lived separate until the death of the husband, which occurred in 1884.

*Held*, that while the agreement for a separation was void, so long as it remained executory, the payment by the husband of the $5,000, and the plaintiff's acceptance and retention of that sum in performance of the agreement, effectually defeated her claim founded upon the ante-nuptial contract. (Barker, J., dissenting.)

Appeal from a judgment entered on a nonsuit ordered at the Monroe Circuit.

The action is brought upon an alleged ante-nuptial agreement made between the plaintiff and the defendants' testator, by which the latter agreed that she should, at his death, be paid $10,000, provided she should in all things and at all times, faithfully perform the duties of a wife, and take such care of him and his household as he should request, and as should be proper and reasonable. They were married September 26, 1881, and July 20, 1882, they entered

into an agreement for separation, in consideration of which and of the cancellation and abrogation of the ante-nuptial agreement to pay her $10,000, he paid her $5,000. They thereafter lived separate and he died in December, 1884. The court directed a nonsuit.

*P. Chamberlain Jr.*, for the appellant.

*W. A. Suntherland* for the respondents.

BRADLEY, J.:

For the purposes of this review it must be assume that the ante-nuptial agreement was made as alleged, and was valid, and that unless the obligation created by it to pay the plaintiff $10,000 at the testator's death, was in some manner released and discharged the plaintiff was entitled to recover. The defense rested upon the effect of the subsequent agreement between the husband and wife, and its performance, and that evidently furnished the ground upon which the nonsuit was ordered. An agreement having in view the separation of husband and wife is against public policy, and yet it is held valid and enforceable in respect to its pecuniary provisions, in case the separation exists at the time or occurs upon the execution of the agreement. But it requires a third party as trustee to render it valid or effectual, without which the agreement is void. (*Rogers v. Rogers*, 4 Paige, 516.)

For the want of such trustee the contract in question, made between husband and wife during coverture, was in that respect, and in whatever respect it was founded upon its provisions for their separation, void. And as a general rule when several stipulations, some of which are void, rest upon one and the same consideration for support, all of its provisions are void. (*Saratoga County Bank v. King*, 44 N. Y., 87; *Friedman v. Bierman*, 43 Hun, 387.) It is contended by the plaintiff's counsel that this doctrine is applicable here and denies to the agreement, and to the transactions pursuant to it, any legal force by way of defense to the alleged cause of action upon the ante-nuptial contract. That would be so if the agreement had remained executory, because as such it was void. It was, however, executed by the husband in so far that he paid to the plaintiff at the time of its execution the $5,000 pro-

## 154 TALLINGER v. MANDEVILLE.

vided for by it which, on his part, was a complete performance. It is upon the fact of such performance that the defense must stand, if it has any support. And in such case relief is not wholly denied to the party who has performed, merely because some of the stipulations of the contract are void, and, so far as they remain executory, are ineffectual to support any remedy. (*Vansittart* v. *Vansittart*, 2 De Gex & Jones, 249; *King* v. *Brown*, 2 Hill, 485; *Galvin* v. *Prentice*, 45 N. Y., 162; *Day* v. *N. Y. C. R. R. Co.*, 51 id., 583.) Amongst other things the plaintiff agreed to accept the $5,000 in satisfaction of her claim resting in the ante-nuptial agreement of the defendant's testator. This undertaking was her separate property. She could do with it as she pleased. And she did accept the $5,000 in performance of the agreement, pursuant to which she had agreed to release or relinquish the claim so created against the husband's estate at his death. This, we think, she could do by an executed agreement between her and her husband when fairly made without fraud, undue influence, or advantage. (*Brace* v. *Gould*, 1 T. & C,. 226; *Sherman* v. *Scott*, 27 Hun, 331; *Sheldon* v. *Clancy*, 42 How., 186; *Armitage* v. *Mace*, 96 N. Y., 538; *Benedict* v. *Driggs*, 34 Hun, 94.) No question in that respect arises here. And for the purposes of this action that branch of the agreement, in view of the performance and acceptance, must be treated as effectually defeating the plaintiff's claim upon the ante-nuptial contract. The plaintiff, so far as appears, retained the fruits of the settlement during the life of the testator, with apparent satisfaction; and has not attempted, for any cause, to rescind the arrangement under which she received its performance. Its adequacy is not the subject for consideration in this action. And it must have the measure in that respect which the parties by their agreement gave to it. The other and invalid stipulations, which were embraced within the consideration paid by the husband, were executory on the part of the plaintiff only. And while she was not legally required to perform or observe them, it is not apparent that she can make them available to defeat the effect of performance by the testator and its acceptance by her, by way of denial of the relief, which, by the terms of the agreement, was given to the defense. We are therefore inclined to think that upon the facts as presented by the record the plaintiff was not entitled to recover. The judgment seems to have been

entered as upon dismissal of complaint on the merits. It is not seen how that could legitimately have been done upon a nonsuit, as this was an action at law on trial by jury. But this may be corrected by motion at Special Term.

The judgment should be affirmed.

HAIGHT, J., concurred; DWIGHT, J., not sitting.

BARKER, P. J. (dissenting):

Upon the conceded facts of the case, and such other facts as the evidence produced on the trial fairly tended to prove, I think a case was made for the consideration of the jury, and if they had found a verdict in the plaintiff's favor it would have been justified on well settled legal principles. I am unable to discover any such failure of proof, in support of the plaintiff's case, upon the merits, as to justify the order granting a nonsuit. The ante-nuptial agreement was not reduced to writing before the marriage, but the agreement as it was made survived that event, and as the parties afterwards voluntarily reduced the same to writing, it became binding upon them from that time forward and was competent evidence of their agreement, and satisfied the provision of the statute of frauds requiring every agreement, promise or undertaking, made upon consideration of marriage, to be in writing and subscribed by the party making the same. The plaintiff having performed the agreement on her part by marrying the deceased, a court of equity would have compelled her husband to observe and perform the ante-nuptial promise. (2 Kent's Com., 162, 172; 2 Blacks. Com., 442; *Dygert* v. *Remerschneider*, 32 N. Y., 629; Laws of 1849, chap. 375, § 3.)

The parties were married in September, 1881, and the written agreement was executed by the husband on the 28th of February, 1882, and contained a recital as follows: "Whereas I, Godfrey Tallinger, did, on the 26th day of September, 1881, marry my present wife, Mary Tallinger, and did then in consideration of said marriage agree to secure to her the payment of ten thousand dollars upon my death, provided she should live with me as my wife until said time, and should in all things at all times, perform faithfully the duties of a wife and take such care of me and my household as I should request and as should be proper and reasonable." And the renewed promise was as follows: " Now, therefore, I do, in consid-

eration of the promise, agree with said Mary, that ten thousand dollars shall be paid to her at my death, provided she shall faithfully perform all of said conditions on her part, and such performance in full shall be a condition precedent to any liability to her upon this agreement." Upon the death of Tallinger, which occurred on the 5th day of December, 1884, the plaintiff had a perfect cause of action against the estate, for the payment of the sum of $10,000, if the agreement remained in full force and effect at that time.

The defendants interposed the defense that, during the lifetime of Mr. Tallinger, the plaintiff, by an instrument in writing, based upon a good and sufficient consideration, released him from his promise contained in the written agreement and canceled the same. The plaintiff did execute an instrument, which in fact contained a release to the effect claimed by the defendants, and they produced the same in evidence and it was stated by counsel on the argument, the fact not appearing by the record, that the nonsuit was granted upon the ground that the cause of action set out in the complaint had been discharged by this instrument.

Upon the 20th of July, 1882, the deceased paid to the plaintiff in cash, $5,000, and the parties executed an instrument in writing, wherein the plaintiff agreed to absent herself forever from the house of her husband and not visit, molest or communicate with him in any manner whatever; to release all claim of dower in his real estate, and not to make any claim after his death on his estate, and to execute to all interested persons proper and sufficient releases of her interest therein. The agreement contained also other covenants expressed in these words, viz.: "And if said Mary shall violate any of the conditions or provisions hereof, or shall fail to perform any of the same, she shall thereupon repay to said Godfrey, his heirs or personal representatives, said $5,000, and the interest thereon from this date, as liquidated damages, and she charges her separate estate therewith, and a certain agreement heretofore executed by said Godfrey and said Mary, whereby he agreed to pay at his death, upon the performance of certain conditions therein expressed the sum of $10,000 is hereby canceled and abrogated." If the release of the plaintiff's cause of action as contained in this instrument is valid and binding, then the nonsuit was properly granted.

The plaintiff, however, contends that the instrument is void, and that the release discharging the husband from his ante-nuptial promise is invalid and inoperative in law; that the marriage relation existing between them disqualified her from giving, granting and conveying directly to her husband, any part of her separate estate, either real or personal.

It is a fundamental principle of the common law that in consequence of the unity of person between husband and wife, neither the husband nor the wife can grant the one to the other any estate in possession, reversion or remainder, to take effect in the lifetime of the grantor. (*White* v. *Wager*, 25 N. Y., 328.)

This disability on the part of the wife to convey lands direct to her husband, had not been removed when this agreement was executed by any of the statutes of this State, enacted for the more effectual protection of the property of married women, except in the particular instances provided in chapter 472 of the Laws of 1880, which is limited to the right to partition between themselves, by deeds of conveyance lands which they own as joint tenants, or as tenants in common. This rule of the common law was affirmed and applied in the case of *White* v. *Wager* (*supra*), and a deed direct from a wife to her husband was declared void and that it did not divest her of her estate in the lands sought to be conveyed. The husband is as much disqualified to take under such a conveyance as she to convey. It is, therefore, necessary, to render a conveyance valid, that the husband's disability to take as well as that of the wife to grant, be removed. This disability extends to all contracts between husband and wife, and renders all conveyances and gifts from the wife to her husband void. By the common law the husband became the owner in his own right of the personal estate of his wife, owned by her at the time of the marriage, and of such as she might thereafter during marriage, acquire. The several legislative enactments on the subject have divested the husband of his common law rights of property and dominion over the personal estate of his wife, and constitute her the sole proprietor of all the property of both kinds which she owned at the time of her marriage and of all which should devolve upon her by title during her coverture, and by the act of 1862, chapter 90, it was expressly declared that her personal property should not be subject to the interference or con-

trol of her husband. The common law disability of husband and wife to contract and trade with each other still exists. Her general engagements are absolutely void, and she can only make such valid and binding contracts as come within the limits of the statutory provisions removing her disabilities and giving her power to make contracts and execute conveyances. (*Bertles* v. *Nunan*, 92 N. Y., 152; *Nash* v. *Mitchell*, 71 id., 199.)

It was held by this court in *Kaufman* v. *Schoeffel* (37 Hun, 140), that by reason of the unity of husband and wife created by the common law they could not contract together, and that the statute had not relieved her so far ·from such disability as to permit her to enter into a business contract with her husband for the purpose of trading together as co-partners. Some cases may be cited to the contrary of this proposition, but, I think, the principle upon which that case was decided is sound and should be followed by this court until ·a contrary ruling is made by some higher authority. The reasons which would make a deed of land direct from the wife to her husband void at law exists, and should be applied with like effect when the transaction relates to a transfer of her personal property direct to her husband. The ante-nuptial contract during the life of the husband constituted a part of her separate estate, as much so as if the promise to pay her the $10,000, on the death of her husband had been the promise of a third person. As the release was void and inoperative at law her right to a cause of action, based upon the promise, was not destroyed by reason of such release. The release may be sustained upon equitable· principles, and the defense interposed in this action prevail if it shall appear upon a full investigation that the same was founded upon a good and sufficient consideration, and was entered into in good faith, without fraud or undue advantage being taken, on the part of the husband, in procuring its execution. (*Livingston* v. *Livingston*, 2 Johns. Ch. R., 537; *Shepard* v. *Shepard*, 7 id., 57; *Sherman* v. *Scott*, 27 Hun, 331.) It has been argued that as a consideration was paid to the plaintiff at the time of the execution of the contract which she then received as a satisfactory compensation for the release, and as nothing remained to be performed by the husband and the plaintiff has not offered to return the money paid, that no case was made for the consideration of the jury; that the plaintiff was in no position to contend that the con-

sideration was inadequate, and that the contract was fraudulent or undue advantage was taken of her situation at the time of its execution. This proposition is based upon a misconception of the issue of fact presented by the evidence, and the state of proofs bearing on the same at the time the nonsuit was granted. If the release was void and inoperative by reason of fraud practiced upon her by her husband in procuring the same she could bring an action upon the promise of the husband, contained in the ante-nuptial agreement, and test the validity of the release in an action founded on the contract, without returning or offering to return the money paid for procuring the release or any part of the same. By applying to the case well settled rules of evidence the proofs were such, when the plaintiff rested, as to make a case for the consideration of the jury, and it was for them to say whether the plaintiff was deceived and cheated, misled or overreached, by her husband in making the contract now under consideration. She now says that she was imposed upon and unfairly treated by her husband, and was induced by him to execute the release upon an inadequate consideration and for that reason she repudiates the same, as she may if this accusation is fairly supported by the evidence.

Upon the question that the consideration was inadequate and that an unfair and undue advantage was taken of the plaintiff by the deceased, the burden of proof was, in the first instance, cast upon the defendant, if, as I have attempted to show, the transaction was void at law, and that the plaintiff was called upon to make proof sufficient to sustain the release in a court of equity. But, conceding for the purposes of this appeal, that the burden of proof was, in the first instance, upon the plaintiff to show by affirmative evidence that the release was procured by fraud, and that the husband's conduct was overreaching, unjust and unfair, then, when the plaintiff rested, a case was made for the consideration of the jury. One of the faults of the defendants' argument as to the force and effect of the evidence upon the question of fraud is, that they treat this bargain between the husband and wife concerning her separate property, the same as if the contract was between ordinary contractors, and utterly ignore the confidential relations existing between the parties to the agreement, which was disclosed on the face of the agreement. The relation existing between husband and wife is a circumstance which

does of itself raise the presumption of the exercise of undue influence by the husband, and that an unfair advantage was taken, and casts the burden of proof upon the defendant to show that the consideration paid was adequate and that no unfair advantage was taken of the plaintiff by her husband. In speaking of transactions between parties occupying confidential relations towards each other, the court, *In the Matter of the Will of Smith* (95 N. Y., 516), remarked: "Dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominating situation, naturally excites suspicion, and when the situation is shown, then there is cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances, that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion or any pressure direct or indirect from the party benefited. This rule does not proceed upon a presumption of the invalidity of the particular transaction without proof. The proof is made, in the first instance, when the relation and the personal intervention of the party claiming the benefit is shown." It is not necessary to cite any other of the many cases in this and other States sustaining this proposition, but the following are referred to because they are in point: *Cowee* v. *Cornell* (75 N. Y., 91); *Carpenter* v. *Soule* (88 id., 256; *Sears* v. *Shafer* (2 Seld., 268; *Platt* v. *Platt* (2 Sup. Ct. R. [T. & C.], 25; 2 Pomeroy's Eq. Jur., § 951); *Kline* v. *Kline* (57 Pa., 120); *Kline's Estate* (64 id., 122); *Fisher* v. *Bishop* (N. Y. Ct. of App., 13 N. Y. St. Rep., 466).

The husband is regarded in the law as the next friend and protector of his wife, and that her position is largely one of dependence, and that in dealing with each other the law recognizes the fact that they do not stand upon equal terms and at arms length. Without referring to other features of the negotiations which led to the execution of the release, and treating the transaction as one having no other purpose than procuring the release upon the consideration of $5,000 paid to the plaintiff, a case was made which carried it beyond the judgment of the judge and made it one for the consideration of the jury, and they would have been justified in finding that the defendants failed to show that the transaction was free from fraud

and undue influence, and that the consideration was not fair and adequate in view of the value of the cause of action which was discharged by the release. At that time the deceased was seventy-four years of age and in feeble health, and the value of the ante-nuptial agreement, as computed by the annuity tables, was at that time worth $7,500. It is to be presumed, the contrary not appearing, that the husband's estate was ample to discharge this obligation. Nor can it be said that the whole of the $5,000 was a benefit derived to the plaintiff for granting the release, for out of it she was obliged to support herself during the life of her husband, and for aught that appears she did so. And further, upon the same consideration she agreed to release her inchoate right of dower and all other interest in his estate, the value of which is not disclosed. And more than all this, the payment of the $5,000 was made upon the condition that the money was to be restored to her husband's estate if she should be unwilling to execute a good and sufficient release of her right of dower and such other interests as the law gave her in his estate. In view of the difference between the value of the contract discharged and the consideration received and the other conditions imposed, it seems to be plain and beyond controversy that the trial judge was in error in disposing of the case as presenting only a question of law, and in deciding that there was nothing for the jury to consider.

There is also evidence tending to prove that when this harsh, severe, and unusual contract was made, the plaintiff was in a disturbed state of mind, and that she and her husband were involved in angry contentions and disputes growing out of his unbecoming familiarity, if not also adulterous practices, with the servants of the household. The articles of separation bear unmistakable evidence, on their face, that they were prepared by counsel of experience, and that the far-reaching provisions embraced therein, were inserted for the purpose of securing an advantage to the husband. It does not appear that the plaintiff consulted friends or had an opportunity to do so, and it may be fairly said that she did not use her best judgment in consenting to the terms of separation, and was persuaded to do so in view of the fact that her husband's conduct was so insulting and degrading to her that she would accept any terms offered to escape the disgrace and the humiliation which she must have experienced by longer

living with her husband. If the release was void and ineffectual, for any of the reasons upon which the plaintiff relies, it was unnecessary for the plaintiff to return or offer to return the $5,000, or any part thereof. The general rule that a party who seeks to rescind a contract into which he has been induced to enter by fraud must first restore to the other party whatever he has obtained by virtue of the contract, has no application to this case. There was no dispute as to the husband's original liability upon the ante-nuptial contract, and that there was payable thereon at the time of his death $10,000 is admitted, if for any cause the release is inoperative. There was no other defense interposed but the release, and if that proved unavailing as a defense then there would be undisputably due the plaintiff a greater sum than the amount paid to the plaintiff. If the release is upheld then it is admitted that the plaintiff was paid no more than she was entitled to. The case, therefore, presents no feature of compromise or settlement of a dispute as to the nature and extent of the husband's liability. This was, in principle, so held in the case of *Pierce* v. *Wood* (3 Foster [N. H.], 519). It was there decided that if a person should effect a compromise of his debts by fraudulent representations and procure a discharge thereof by paying a ten per cent thereon, and an action be brought to recover the balance, on the ground of fraud, it is not necessary, as preliminary to the right of action that the plaintiff repay or offer to repay the ten per cent received, and that the doctrine of the rescission of contracts does not apply to such a case. This case was referred to in *Gould* v. *Cayuga County National Bank* (86 N. Y., 75), and the doctrine of that case stated, approved and an illustration made as to the class of cases to which the principle would be applicable, and when it would be unnecessary to offer restoration. In this case if the release should be held to be void for fraud the sum paid to the plaintiff can be applied in reduction of the recovery. Upon the case as now made there is no pretense that there was any other defense to the contrac sued upon that the one founded upon the release.

Judgment affirmed.