URSULA Jooss, Appellant, v. CHRISTIAN FEY et al., Respondents.

A married woman may take and hold real property as a joint tenant with her husband, and where by a deed to herself and her husband it appears plainly that the intent was to convey to her not merely as a wife, but separately, by virtue of her individual right, as joint tenant with him, she has the right to dispose of her interest independent of her husband.

Certain premises were, in 1882, purchased by F. and his wife, each contributing to the purchase-money from his and her separate estate. The words of the grant were to " the parties of the second part as joint tenants and to their heirs and assigns," and the habendum clause was to them " as joint tenants and not as tenants in common." The wife subsequently conveyed her interest in the premises to plaintiff. In an action for a partition thereof, *held*, that the wife took and held as joint tenant with her husband, not as tenant by the entirety; that she had power to convey, and by her deed plaintiff acquired her interest (§ 3, chap. 200, Laws of 1848, as amended by chap. 375, Laws of 1849); and that the action was maintainable. (Code Civ. Pro. § 1532.)

*Bertles* v. *Nunan* (92 N. Y. 152), distinguished.

(Argued October 8, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the City Court of Brooklyn entered upon an order made February 24,

1890, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This was an action of partition.

The defendants Christian Fey and Louise Fey are husband and wife, and in 1882, they bought the premises described in the complaint, each contributing to the purchase-money from his and her own property. The words of grant were to them "the parties of the second part as joint tenants and to their heirs and assigns forever," and the habendum clause was to them "as joint tenants and not as tenants in common." Subsequently Louise, the wife, conveyed her interest in the premises to the plaintiff. The court below, at Trial and at General Terms, held that the action could not be maintained, on the ground that the defendants had acquired and held the premises as tenants by the entirety, and the wife could not convey as she did.

*James C. Church* for respondents. The fact that the habendum clause of the deed contained the statement that the grantees took as joint tenants and not as tenants in common was insufficient to so vest the title in them, as under the common law they take as tenants by the entireties. (4 Wait's Act. & Def. 170; *Torrey* v. *Torrey,* 14 N. Y. 430; *Rogers* v. *Johnson,* 5 Johns. Ch. 430; *Nash* v. *Mitchell,* 71 N. Y. 199; *Bertles* v. *Nunan,* 92 id. 161; *Zorntlein* v. *Bram,* 100 id. 12; *Fitzgerald* v. *Quann,* 109 id. 445.)

*H. C. Conrady* for appellant. All natural persons may be joint tenants with each other, and husband and wife may hold as joint tenants and tenants in common. (Tiedeman on Real Prop. 163, § 264; 4 Waite's Act. & Def. 170; 2 Kent's Comm. 132; 4 id. 363; *Moore* v. *Moore,* 47 N. Y. 467; 1 Washb. on Real Prop. [3d ed.] 579; 2 Bl. Comm. 182; Preston on Estates, 132; 2 Preston on Abstracts, 41; *Hicks* v. *Cochran,* 4 Edw. Ch. 107; *McDermott* v. *French,* 15 N. J. Eq. 78; *Cloos* v. *Cloos,* 55 Hun, 450; 24 Abb. [N. C.] 219.) It was the intention of the grantor and grantees that the latter should acquire and become seized of the property

conveyed as joint tenants, and this they had a right to do, although they held the relation to one another of husband and wife. (Laws of 1848, chap. 200, § 3; Laws of 1849, chap. 375.) Joint tenants may maintain partition. (Code Civ. Pro. § 1532; 1 Washb. on Real Prop. 457.) It is claimed in this case that in consequence of the fact that the defendants are husband and wife, they, therefore, took title to the said property under the common-law rule, as tenants by the entirety. This is not tenable. (Laws of 1849, chap. 375; Laws of 1848, chap. 200, § 3; Stewart on Husband & Wife, § 310; Laws of 1880, chap. 472; *Zorntlein* v. *Bram*, 100 N. Y. 12.) A joint tenant may sell his share and the tenancy then becomes a tenancy in common. (Tiedeman on Real Prop. 158, § 238.) The habendum clause in the deed to defendants should be construed in accordance with the intent of the parties. (2 R. S. 748, § 2.)

Gray, J. Prior to the passage of the various acts by the legislature of this state for the benefit of married women (in the years 1848, 1849, 1860 and 1862), the common-law rule obtained that by a conveyance to husband and wife, they could only take and hold the estate as tenants by the entirety. It was immaterial to affect the quality of their holding, whether the estate was given to them, or acquired by their joint purchase. Words of grant which, to separate persons, would convey in joint tenancy, to husband and wife would convey by entireties. They could not take and hold otherwise. They were seized each of the whole, and neither could sell without the consent of the other. (Williams on Real Property, 208; 2 Kent's Com. 110, 132; *Jackson* v. *Stevens*, 16 Johns. 113, 115.) This estate of tenancy by the entirety has but one feature in common with that of a joint tenancy, and that is in the right of survivorship. In all other essential respects they differ. The estate which vests by virtue of a grant jointly to husband and wife is peculiarly the result, or product of the marriage relation, and depends for its continuance upon the unity of man and wife.

Lately, at our October term, we had occasion, in *Steltz* v.

*Schreck* (128 N. Y. 263), to consider the effect upon this tenancy by the entirety of the severance of the marriage relation by a divorce, and we held that husband and wife then held as tenants in common. This result, it was considered, flowed logically from the peculiar cause for the tenancy by the entirety. It depended upon the continuance of the marriage relation, and ceased with its cessation.

When the Married Women's Acts were passed, the effect was to relieve them from various disabilities, under which they were at common law, and to qualify them, to the extent specified in the acts, to act as unmarried women might with respect to their separate estates, and to vest them with the same capacity for the acquisition of a separate property as though they were unmarried women. The disabilities were not wholly removed, but only to the extent that the statutes, by their plain reading, must be taken to have changed the common law as affecting the legal status of married women. By section 3 of chapter 200 of the Laws of 1848, as amended by chapter 375 of the Laws of 1849, it was provided that "any married female may take by inheritance, or by gift, grant, devise or bequest, from any other person than her husband and hold to her sole and separate use, and convey and devise real and personal property, or any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with like effect as if unmarried, etc."

The subsequent legislation of 1860 (Chap. 90) and 1862 (Chap. 172) provided that all property owned by, coming to, or acquired by a married woman as her separate property "shall, notwithstanding her marriage, be and remain her sole and separate property * * * and shall not be subject to the interference or control of her husband, or liable for his debts," and that she may sell and convey such property as if she were unmarried. In *Meeker* v. *Wright* (76 N. Y. 262), it was considered by the learned judge, who delivered the opinion in that case, that this legislation had abrogated the common-law rule governing a conveyance to husband and wife. But in that view a majority of the judges did not concur and the

appeal was decided upon another point. When, later, in the case of *Bertles* v. *Nunan* (92 N. Y. 152), it became necessary to consider the effect of the changes wrought by the legislature of this state in the status of the married woman at common law, the majority of the court concurred with Judge EARL in his opinion that whatever the effect of a conveyance to husband and wife was prior to 1848, it so remained thereafter. It was considered that the provisions of the legislative acts in behalf of married women did not define what estate the husband and wife shall take in lands conveyed to them jointly, and that the legislature did not contemplate the abrogation of their common-law unity.

"The common-law incidents of marriage," it was remarked, "are swept away only by express enactments." The question is so fully discussed and the authorities and legislation are so generally reviewed by Judge EARL, as to relieve us from the necessity of repetition. Whatever was the previous drift of the decisions, in this and in other courts, the case of *Bertles* v. *Nunan* must be held as firmly establishing the proposition that the common-law rule as to the unity of the husband and wife had not been abrogated by the legislation of this state, with respect to their tenancy of real property when conveyed to them merely by such a description. Those expressions of the learned judge, in his opinion in that case, which speak of the wife's right to receive conveyances, or of their force and effect in respect to the estate granted, have reference to the case of a grant as made to the wife in connection with her husband, and should not be read as importing otherwise in the construction of the statutes. Nothing in that decision holds against the right, or the married woman's capacity, to hold real property as a joint tenant with her husband, provided that it is the plain intent of the deed of conveyance, as expressed in the words of grant. If it appears plainly that she takes, not merely as the wife, but separately, by virtue of her individual right, then the case would come within the express words of the enabling enactments of 1848 and 1849, which conferred the capacity upon the married woman to acquire by grant or otherwise. Under

these acts a husband and wife may be made joint tenants, or tenants in common, where the intention is made plain by express words. This must be so, if we would give to them meaning and force. The disabilities of the woman, which were the consequences of her coverture at common law, were incompatible with modern notions and with that recognition of her natural rights, which a changed condition of things in the world compelled, and the legislation of the state, commencing with the year 1848, was the outcome of such forces of thought.

The unity of husband and wife, caused by the marriage relation, continued to subsist, notwithstanding legislation, for it had not expressly abrogated that rule of the common law. The utmost it had done was in express enactments to confer especial capacities and powers upon the married woman, among which were the power to take property as though she were unmarried and the power to dispose of it as such. Legislation had almost entirely relieved her of her common-law disabilities, but the rule of strictness in the construction of statutes changing the common law forbids extending the effect of an act beyond what is required to give it a reasonable and proper effect. *Bertles* v. *Nunan* did not deny a full operation to the legislative enactments ; it simply applied this rule of construction and confined the operation to what the language of the acts clearly imported, and as they did not in terms withdraw the married female wholly from her status under the law, as it existed prior to the Revised Statutes, nor defined the kind of estate which would vest in her by a grant jointly to her and her husband, the prior rule of the common law remained in force and qualified the interest of each as a tenancy by the entirety ; where, by virtue of their union of person, each was seized as of the whole estate, with the right of survivorship and without the right of independent alienation. But in the case before us the operation of the common-law rule was obviated by the intention of the grantor as shown by the express words of the grant, and the case was brought within the purview of the enabling acts and so the wife took and

held as joint tenant with her husband. This interest was, therefore, alienable by her and was acquired by the plaintiff through her conveyance to him. That acquisition entitled him under the Code (§ 1532) to bring the action for a partition.

For the reasons given, I think the judgments of the Special and of the General Terms should be reversed and a new trial ordered, with costs in all the courts to abide the event of the trial.

All concur.

Judgments reversed.