## In the Matter of the Estate of GENNARO BAFFA, Deceased.

Surrogate's Court, Kings County, February 20, 1931.

*Howard W. Ameli* and *Albert D. Smith*, for the petitioner.

*John O. Gempler*, for Jennie (Baffa) Bugliari and Verona (Baffa) Nugent, parties in interest.

WINGATE, S.   Words, whether spoken or written, are interesting and important only to the extent that they serve as efficient media for the transference of thoughts or ideas from the consciousness of one individual to that of another.   In last analysis, names are merely verbal abbreviations or shortcuts for conveying in a single word a conception which otherwise would require extended explanation.

It is this thought which underlies the statements in Judge VANN's interesting dissertation on the subject of names in *Smith* v. *United States Casualty Co.* (197 N. Y. 420, 428): " ' At common law a man may lawfully change his name, or by general usage or habit acquire another name than that originally borne by him, and this without the intervention of either the sovereign, the courts, or Parliament; and the common law, unless changed by statute, of course obtains in the United States.'   (21 Am. & Eng. Encyc. of Law [2d ed.], 311.)

" ' One may legally name himself, or change his name, or acquire a name by reputation, general usage, and habit.' (2 Fiero Sp. Proc. [2d ed.] 847.)

" The subject is not affected by the various statutes, commencing in 1847 and continuing with some expansion and changes to the present time, whereby a change of name is authorized by judicial proceedings. (L. 1847, ch. 464; Code Civ. Pro. §§ 2410–2415.) As was said by the Supreme Court of Pennsylvania of a similar statute in that state, this legislation is simply in affirmance and aid of the common law to make a definite point of time when the change shall take effect."

These considerations are important in the case at bar respecting the rights of the accountant in the premises 834 Madison street, Brooklyn, which was conveyed on December 26, 1919, to " Gennaro Baffa and Vita Marraro, both of 834 Madison Street " by deed duly recorded three days later. Since the identity of the grantee is known, the name by which she was called is immaterial.

It has been conclusively demonstrated by an overwhelming array of witnesses that for a period long prior to this grant and continuing up to the time of his death, a valid common-law marriage existed between the grantees (*Matter of Smith,* 136 Misc. 863, 866 *et seq.* and cases cited), and the question for determination is whether this conveyance actually made to the two parties to a valid and subsisting marriage constituted them tenants in common or tenants by the entirety.

The identity of the grantees is unquestionable as is the fact of their mutual relationship at the time of the conveyance.

Since very early times it has been the law that " Where land is conveyed to husband and wife, they do not take as joint tenants or as tenants in common; for, being considered as one person in law, they cannot take by moieties, but both are seized of the entirety, and neither of them can dispose of any part without the assent of the other, and the whole goes to the survivor." (*Torrey* v. *Torrey,* 14 N. Y. 430, 431, 432; to similar effect see *Matter of Klatzl,* 216 id. 83, 86, 88, 90; *Matter of Lyon,* 233 id. 208, 211.)

From all of the multitudinous cases on the subject, it is apparent that the pivotal question in the determination of whether or not a conveyance to a man and women creates a tenancy in common or a tenancy by the entirety is whether or not they were validly married. If such marriage existed, a tenancy by the entirety must be held to exist even though no words are inserted in the deed describing the relation which they bear to each other. This is demonstrated by the comparatively early case of *Zorntlein* v. *Bram* (63 How. Pr. 240). It there appeared that " the premises

were conveyed to Jacob Bram and Babeta Bram; that at the time of the making of said conveyance Babeta Bram was the wife of Jacob Bram, although the fact was not mentioned in the conveyance." The trial court expressly held that the parties became tenants in common, overruling an earnest contention that the holding was by the entirety, and directed a partition.

This result was reversed by the Court of Appeals in 100 New York, 12, 15, which held that a tenancy by the entirety existed.

A like result was attained in the recent case of *Armondi* v. *Dunham* (221 App. Div. 679), in which the court says (at p. 681): " In the cases where under a grant to husband and wife a tenancy by the entirety has been upheld, there is no special emphasis placed on descriptive words denoting the relationship. While no doubt it is better practice as a matter of evidence or of certainty to add descriptive words in the deed stating the relationship and the nature of the grant, it is not at all essential if the relationship of husband and wife exists and is established. ' It is still the law of this State that where a grant is made to husband and wife without any words specially prescribing, qualifying or characterizing the kind or quality of the estate which each shall take, the grantees hold as tenants by the entirety.' (*Miner* v. *Brown*, 133 N. Y. 308, 311.) The estate which vests is peculiarly the result or product of the marriage relation. (*Jooss* v. *Fey*, 129 N. Y. 17, 19.) It vests in both as an entirety. (*Matter of Lyon, supra.*) That the estate is created by the relation, in the absence of descriptive words, is the rule in other jurisdictions. (See 30 C. J. 558, 559, and cases cited.)"

It follows that Mrs. Vita Marraro Baffa is the sole owner of the Madison street property and that the objection directed to this question must be overruled.

As she has held the record title to the Macon street property since 1921, decedent's heirs at law have, of course, no claim thereto, and since her status as his wife was clearly established, she is entitled to dower in the Milton place real estate.

The sole remaining objection was adjusted on the hearing and results in an amendment of Schedule A of the account by the addition of $241, the balance in the Italian Savings Bank, and an allowance of $95 in Schedule C for expenditures in connection with the funeral.

Proceed accordingly.